May Term,
1853.

BRICKER
v.
HUGHES.

*J. A. Fay* and *J. S. Newman*, for the plaintiff.

*J. Rariden*, for the defendant.

---

## BRICKER *v.* HUGHES.

Growing crops raised annually by labor, are subject to sale as personal property, even before their maturity, and the sale does not necessarily involve an interest in realty requiring a written agreement.

A sale of personal property is not complete, where something yet remains to be done by the seller before the article sold can be identified.

In trover, upon the general issue, the plaintiff must recover upon the strength of his own title and right of possession, and not on the want of title of his adversary.

*Saturday, May 28.*

ERROR to the *Vermillion* Circuit Court.

PERKINS, J.—Trover by *Bricker* against *Hughes* for the conversion of a quantity of corn. Plea, the general issue. Trial by the Court without a jury, and judgment for the defendant.

The evidence is upon the record.

The original owner of the corn in question was one *Guffy*, who sold, or attempted to sell, it, at different times, both to the plaintiff and defendant.

In *November*, 1847, while the corn was still standing in the field, he sold it to the defendant, *Hughes*. "The corn," says the witness, "was to be delivered in the month of

*May* following. *Hughes* wanted *Guffy* to haul it to the river, but *Guffy* did not know whether he could, and it was finally agreed that if *Hughes* hauled it, the expense for hauling, whatever it might be, should be deducted out of the price, which was 16 and a half cents a bushel, upon the bank of the river, in the crib. *Hughes* bought *Guffy's* corn, eight hundred bushels, more or less." He paid something on it at the time of the purchase, and *Guffy* subsequently delivered about seventy bushels to *Hughes*.

Another witness states that *Bricker* called at the store of *Hughes* a short time after the latter "had bought *Guffy's* corn, and said he heard that *Hughes* had bought the corn of *Guffy;* that he, *Bricker*, had an account against *Guffy*, and wanted *Hughes* to save it for him; it was a doctor-bill, the amount not recollected. *Hughes* said *Guffy* owed him already nearly the amount of the value of the corn, but if he got the full quantity, eight hundred bushels, there would be something going to *Guffy*, and he would try and save *Bricker's* account out of it." Afterwards, *Hughes* went down the river on business.

While he was absent, on the 30th of *January*, 1848, *Sunday*, says a witness, (*Chambers*), "I met *Bricker* and *Guffy* in the *Wabash* bottom, on the bank of the river. They called on me to witness a contract for the sale of corn and some other property which, they said, had taken place the day before. They both said that *Guffy* had sold *Bricker* a quantity of corn then on the *Bales* farm, upon which it was cultivated by *Guffy*. The corn sold was all the corn *Guffy* had raised on the farm, except one hundred bushels sold to *Henry Martin*, and three hundred and twenty-six bushels, the rent-corn to the landlord. I had been employed previously by *Guffy* to gather this corn and put it in a crib on the farm. About five hundred bushels had been gathered at the time of the alleged sale. At that time it was stated by *Guffy* that I should go on and gather the corn, and deliver it in said crib for *Bricker*, which I did." *Bricker* paid for the corn in a bill for medical services, &c., and *Guffy* paid for gather-

ing it. *Bricker* employed witness to haul the corn to a crib on the *Wabash* river. The crib in which the corn was placed on the bank of said river, belonged to the defendant, *Hughes*, whose clerk had given *Bricker* permission thus to occupy it without knowing what corn it was that was to be placed in it. About six hundred and fifty bushels in all were deposited in the crib. *Hughes*, on his return, finding the corn in his crib, took it on a boat "down the river," and sold it.

The counsel for the plaintiff contend, and it is the only position they rely upon to reverse the judgment below, that the Court erred in finding against *Bricker* on the evidence, because no property passed to *Hughes* on the sale of the corn by *Guffy* to him, as the quantity sold was not separated from that grown on the same farm with it, belonging to other persons. But this is begging the question. That the corn sold was mixed with that belonging to other persons is assumed, not proved. The evidence is, that *Hughes* bought *Guffy's* corn, more or less. This corn *Guffy* raised on a farm belonging to another person; but the character of the contract under which it was raised is not proved. And suppose the use of the farm was to be paid for by giving a part of the crop, still *Guffy* might have taken his portion in a separate part of the field or fields, and thus had it by itself. In other words, the corn might have been divided by making a division of the field or fields in which it was grown, before it was gathered. And if such a division had been made, the sale of his corn by *Guffy* to *Hughes* in this case passed the title; and as *Bricker* bought afterwards with full knowledge of said sale, he has no pretence on which to claim the corn.

Growing crops raised annually by labor, are the subject of sale as personal property, even before their maturity, and their sale does not necessarily involve an interest in the realty requiring a written agreement. *Northern* v. *The State*, 1 Ind. R. 113.

But if the corn had not been divided before it was gathered, then there is no evidence that it had been be-

fore the pretended sale to *Bricker*. The evidence in regard to that sale is, that it embraced all the corn *Guffy* had raised on the *Bales* farm, except one hundred bushels sold to *Henry Martin*, and three hundred and twenty-six bushels, the rent-corn to the landlord. And if the corn belonging to *Guffy* had not, at that time, been separated from that belonging to *Martin* and that belonging to the landlord, then no title passed to *Bricker*, because something yet remained to be done by the seller before the particular corn sold could be known; and we do not think the procuring the whole quantity belonging to *Martin*, the landlord, and *Guffy*, to be removed into a crib belonging to *Hughes*, in the manner it was done in this case, can help the matter. Conceding, therefore, for argument's sake, that *Hughes* had no title, still *Bricker* could not recover; for, in trover, upon the general issue, the plaintiff must recover, if at all, upon his own title and right to possession.

In this case, it is manifest the equity is all on the side of the defendant. The Court below, sitting as a jury, has found in his favor, and the judgment is certainly not so clearly wrong as to authorize this Court to disturb it.

*Per Curiam.*—The judgment is affirmed with costs.

*A. Kinney* and *J. P. Usher*, for the plaintiff.

*J. A. Wright* and *E. W. McGaughey*, for the defendant.