Michael N. RAML, Plaintiff
and Appellee,

v.

Cheryl L. RAML, Defendant
and Appellant.

No. 17992.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1993.

Decided May 5, 1993.

Terry J. Sutton of Sutton Law Office, Watertown, for plaintiff and appellee.

Roger W. Ellyson of Ellyson Law Offices, Watertown, for defendant and appellant.

PER CURIAM.

Cheryl L. Raml (Cheryl) appeals the property division in a judgment and decree of divorce from Michael N. Raml (Michael). We reverse and remand.

## FACTS

The parties' divorce trial took place on September 18, 1991. On February 18, 1992, the trial court entered findings of fact, conclusions of law and a judgment and decree of divorce dividing the marital property as follows:

| PROPERTY | MICHAEL | CHERYL |
|---|---|---|
| House | | $34,500.00 |
| Car, 1982 Ford LTD | | 2,500.00 |
| Household Goods and Furnishings | | 4,045.00 |
| Checking Account | | 450.00 |
| Farm Land | $20,000.00 | |
| Farm Machinery and Equipment | 77,545.00 | |
| Growing Crops and Grain and Hay on Hand | ? | ? |
| Total | $97,545.00 | $41,495.00 |

All of the following marital debts were assigned to Michael:

| DEBTS | AMOUNT |
| --- | --- |
| F & M Bank | $36,000.00 |
| Community Oil Co. | 2,534.00 |
| John Deere Credit Corp. | 3,000.00 |
| | |
| Total | $41,534.00 |

Based upon the above figures, the net property distribution to Michael was $56,011 and the net distribution to Cheryl was $41,495, a disparity of some $14,000. The trial court justified this disparity finding that it "would be overcome or neutralized when one considers the initial contribution of cash and farm equipment and machinery brought into the marriage by Michael, and when one considers the net [e]ffect of this decision upon each party hereto."

With regard to the valuation of growing crops and the distribution of that asset, the trial court determined that:

[Michael] shall pay to [Cheryl] one-half (½) of the value of all growing crops, grain and hay harvested or acquired in the year 1991 whether previously sold or not. *Said value of said crops shall be determined in a subsequent hearing held before this Court.*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that should [Cheryl's] share of the 1991 crops exceed $1,000.00 then and in that event, each party will be obligated to pay their own separate attorney fees and costs incurred in this action. However, should [Cheryl's] share of the 1991 crops be less than $1,000.00, then and in that event, [Michael] shall be obligated to pay unto [Cheryl] $1,000.00 to be applied to the attorney fees and costs she incurred in the prosecution of this action. (emphasis added).

The supplemental valuation hearing on Michael's 1991 crop was held on February 28, 1992. The only evidence received during the hearing was Michael's testimony and an itemized statement of income and expenses he had prepared in anticipation of the hearing and for tax purposes. On May 15, 1992, the trial court entered an order directing Michael to submit a copy of his 1991 Federal Income Tax Return to the court. On June 26, 1992, the trial court entered supplementary findings of fact and conclusions of law and an order apportioning the income from the 1991 crop.

The trial court found Michael's income from the sale of grain and hay in 1991 was $24,209. The trial court further found Michael's claimed expenses of $32,356 left no net income to split between the parties. Based on these findings, the trial court's final order provided that, "Michael N. Raml shall pay to the Defendant, Cheryl L. Raml, the sum of One Thousand Dollars ($1,000.00) either as an additional allocation of Property Settlement or to apply towards the Defendants attorneys fees and costs incurred in this matter." Cheryl appeals.

### ISSUE

WAS THE TRIAL COURT CLEARLY ERRONEOUS IN ITS VALUATION OF THE 1991 CROP?

The central issue in this case is the trial court's valuation of the 1991 crop. This court has previously held that "[e]xactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures." The only time this court will interfere with a trial court's valuations is when they are clearly erroneous or where assets are completely overlooked by said court. In the absence of a stipulation as to the value of marital

assets, the parties must "produce hard evidence as to those values other than their own personal opinions." The trial court, however, is not required to accept either party's proposed valuation.

*Studt v. Studt,* 443 N.W.2d 639, 641 (S.D. 1989) (citations omitted).

There are only three items of evidence in the record on which to base a review for clear error in the trial court's valuation of Michael's 1991 crop: Michael's testimony during the supplemental valuation hearing; his itemized statement of income and expenses submitted during the hearing; and, his 1991 Federal Income Tax Return. Michael's testimony and income statement reflect a total value for crops sold and on hand of $24,209. His testimony and statement of expenses reflect total expenses of $32,604. Thus, this evidence is in accord with the trial court's valuation of the 1991 crop. However, the only "hard evidence" of income and expenses for 1991, Michael's income tax return for that year, shows total sales and income from farm programs of $94,849, gross income of $57,348, and total expenses of $54,045. Thus, there is a disparity of well over $30,000 between Michael's gross income as reported on his 1991 tax return and his 1991 gross income according to his testimony and written income statement. There is a further disparity of over $20,000 between the expenses reported on Michael's tax return and the expenses outlined in his testimony and written expense statement.

The discrepancies in the above figures are not explained anywhere in this record on appeal. Moreover, the trial court was inconsistent in the figures it relied upon to establish the value of Michael's 1991 crop. Apparently relying on Michael's testimony and income statement, the trial court found his 1991 income from the sale of grain and hay was $24,209. Also in apparent reliance on Michael's testimony and expense statement, the trial court determined his expenses of $32,356 left no net income to split between the parties. Nevertheless, relying on the expenses outlined in Michael's income tax return, the trial court entered the following additional finding of fact:

Further subtracting the depreciation and payment to the F & M Bank of One Thousand Seven Hundred Sixty Four Dollars ($1,764.00) and Six Thousand Five Hundred Ninety Nine Dollars ($6,599.00), respectively, from [Michael's] claimed expenses of Fifty Four Thousand Forty Five Dollars and Eighty Six Cents ($54,045.86) *as scheduled on the Schedule F of his Income Tax Return for 1991,* [Michael] would still have expenses of Twenty Three Thousand Nine Hundred Ninety Three Dollars ($23,993), which is less than a One Thousand Dollar ($1,000.00) net profit. (emphasis added).

Thus, while the trial court accepted Michael's testimony and income statement as evidence of his gross crop income for 1991, it looked to his 1991 tax return for evidence of his reported farm expenses for that year but not his reported crop income. There is no indication in the record of the reason for this inconsistency.

While some variance between Michael's testimony, his income and expense statement and his official 1991 income tax return might well be expected and findings based upon this evidence upheld as falling within a "reasonable range of figures," the inconsistencies outlined above are simply too vast to ignore. The difference in the figures proffered for Michael's 1991 income is alone sufficient to warrant a strong possibility that assets may have been completely overlooked by the trial court.

■ Another factor calling the trial court's valuation of the 1991 crop into question is its reliance on the value of the crop after subtracting the costs of production. The parties' property, including the 1991 crop, was divided based upon evidence submitted during their divorce trial in September 1991. It was only the *valuation* of the 1991 crop that was delayed until the following year. In September of 1991, the *only* debts of the parties were $36,000 to F & M Bank, $2,534 to Community Oil Company and $3,000 to John Deere Credit Corporation. Thus, it is apparent that by September of 1991, significant costs of production for the 1991 crop had either already

been paid from the mutual assets of the parties or were reflected in the debts to the bank, the oil company and the implement company. Those debts were assigned to Michael in the property division. To deduct the same production costs from the value of the 1991 crop before calculating Cheryl's half of that value results in a double benefit to Michael. Therefore, in calculating the value of the 1991 crop on remand, the trial court must avoid deduction of any costs of production that would result in such a double benefit.

Based upon the above analysis, we remand the issue of the valuation of the 1991 crop to the trial court.

### APPELLATE ATTORNEY'S FEES

■ Both parties have filed motions for an award of appellate attorney's fees. The motions are accompanied by itemized statements of costs incurred and legal services rendered as required by this court's decision in *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985).

Factors to be considered in awarding a party attorney's fees on appeal are outlined in *Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981):

> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

Based upon these factors, we award Cheryl $1,000 in appellate attorney's fees.

Reversed and remanded.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.