**Thomas HUNT, Appellant–Respondent,**

v.

**Gloria J. HUNT, Appellee–Petitioner.**

**No. 64A03–9408–CV–316.**

Court of Appeals of Indiana,
Third District.

Dec. 29, 1994.

George R. Livarchik, Livarchik & Farah-mand, Chesterton, for appellant.

James V. Tsoutsouris, Valparaiso, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-respondent Thomas Hunt appeals the trial court's determination as to the division of property in the dissolution of his marriage to appellee-petitioner Gloria J. Hunt. The evidence relevant to the appeal appears below.

The parties were married in December 1970. Two children were born during the marriage. A 20–year–old son was emancipated at the time of the dissolution proceedings. Custody and support for a 14–year–old daughter were at issue in the proceedings below. However, no matters regarding custody and support have been raised for review.

Gloria did not finish high school prior to the marriage. In 1987, Gloria completed a G.E.D. program. During the marriage, Gloria did not work outside of the home until approximately four years prior to the dissolution proceedings. She then worked in factory settings performing packing and assembly work. Gloria had to discontinue working for some employers due to family obligations. She was unable to work a "swing shift" because she needed to take care of her daughter. She left another place of employment because it was located too far from her home.

At the time of the October 1993 hearing, Gloria was employed by Best Home Inspections earning $200.00 per week. However, the evidence indicates that she did not expect to be paid until sometime after the dissolution proceedings were final. She had been terminated from her latest factory job due to an injury. At the time of the hearing, Gloria had no pension, IRA or savings for the future accumulated on her own.

Thomas was employed at Heckett Engineering. He had worked there nineteen years at the time of the October 1993 hearing. The year before the hearing, Thomas earned $47,000.00.

Gloria testified that she contributed most of her income to the family's resources. She purchased food, gave their daughter lunch money and gave money to Thomas. She occasionally had the opportunity to purchase items for herself, as did Thomas.

During the October 1993 hearing, Thomas presented evidence that Gloria and her friend Russell King had discussed co-ownership of a home inspection business. Also on cross-examination, Gloria acknowledged the existence of a post office box in her name only. She stated that the post office box was opened to facilitate establishing credit in her own name. Thomas presented the evidence ostensibly to prove the existence of marital assets available for distribution and the waste of marital assets. Gloria testified that although she and King had discussed in pro-

spective terms the commencement of a business and that she had taken a business venture class, she was not a partner in the business.

By the time of the hearing in March 1994, Gloria was working at ServiceMaster cleaning homes after fire or water damage. She was earning $7.00 per hour working less than 40 hours per week. Between January 1993 and January 1994, Gloria earned approximately $9,500.00.

At the March 1994 hearing, Thomas testified that his pension was valued at $43,000.00. Further, he stated that he expected to earn approximately $48,000.00 during 1994. He stated that it was by mutual agreement that Gloria had not worked outside of the home while the children were younger. He noted that her attempt to do so "didn't work out too well." He also understood that while he was building seniority and a pension at his employment, Gloria had not established any security and was at a disadvantage in the job market.

The trial court awarded Gloria 60% of the marital assets including Thomas' pension. The court specifically found that the disparity in earning ability warranted an unequal distribution. This appeal ensued. Other evidence appears below as necessary to discussion of the issues.

Thomas raises two issues for review. As restated, the issues are:

(1) whether the trial court erred in awarding Gloria 60% of the marital property; and

(2) whether the trial court erred in failing to assign a value to Gloria's interest in the home inspection business.

Gloria contends that Thomas' appeal is frivolous and that she should be awarded appellate attorney fees.

IND.CODE § 31–1–11.5–11(c) (1988 Ed.) provides that a court shall presume that an equal division of marital property is just and reasonable. The court may determine that other factors, including "[t]he earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties," require an unequal distribution. IND.CODE § 31–1–11.5–11(c)(5).

■ Subject to statutory provisions including the above provision, the disposition of marital assets is committed to the sound discretion of the trial court. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 653. This Court may not reweigh evidence or assess the credibility of witnesses. *Id.* Instead, on review only the evidence most favorable to the trial court's disposition will be considered. *Id.* Reversal is warranted only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A party challenging the trial court's division of marital assets must overcome a strong presumption that the court complied with the statute and properly considered the evidence on each of the statutory factors. *Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368, 1373.

■ Here, the trial court was presented with evidence that Gloria had not been a member of the work force for much of the 24–year marriage. The decision that she would remain a homemaker was mutual. Thomas argues that Gloria did not present evidence of the quality of her homemaking services. Apparently, his contention is that she must prove some level of competency in order to obtain credit for contributing to the family during the marriage. Such is not the case. Moreover, Thomas presented no evidence that she failed in her homemaking duties.

■ Further, evidence of the disparity in earning capacity attributable to factors including Gloria's lengthy hiatus from the work force, her education, Thomas' 19–year position with the same employer, and Thomas' pension establish that the trial court did not err in finding that Gloria is entitled to 60% of the marital assets. No error occurred as to the unequal distribution of the marital property.

■ Thomas complains that the trial court erred in failing to assign a value to and divide Gloria's interest in a home inspection business. Although for purposes of dissolution all "assets" of the parties are considered property to be divided, a party must have a

"present interest of possessory value." *See Fiste,* 627 N.E.2d at 1372. At trial, Thomas attempted to establish that Gloria dissipated marital assets by assisting in the development of the business, that Gloria is a partner in the business, and that Gloria's actions require attribution of fault.

Chiefly, Thomas relied upon excerpts from King's deposition, letters by King to Gloria regarding his hope that they could establish a business together, and speculation to demonstrate dissipation of assets and Gloria's partnership. Thomas contends that the post office box, her attendance at a business venture class, three trips to Indianapolis to observe a home inspection business, five long-distance telephone calls at 28 cents each, the possibility that she typed a letter, and the possibility that she distributed flyers for the business require a finding that she is a partner in the business.

■ Yet, Gloria's testimony and King's deposition establish that she is not a partner or a co-owner of the business. In fact, King asserted in his deposition that Gloria had not received any money from his fledgling business. He was operating the business from his apartment on a part-time basis. He had spent less than $1,000.00 as start-up costs. Gloria was not listed as a partner, co-owner or employee on documents executed for the bank, including an affidavit of sole ownership. He stated that he had modified his original speculation that he could earn $50,-000.00 per year to approximately $29,000.00 per year. Also, he acknowledged that he had offered Gloria partnership in the business but that he had revised that offer to one of work as an employee. The evidence presented by Thomas does not support a finding that Gloria had any interest in King's business. The trial court could not rely upon Thomas' speculation to find an asset which clearly does not exist.

■ Additionally, Thomas cannot rely upon the circumstances set out above to demonstrate wasting of marital assets. He presented evidence of only nominal charges for telephone calls and did not demonstrate that Gloria actually performed all of the services alleged.

■ As to any attribution of fault, such is not relevant to dissolution proceedings except as related to the disposition or dissipation of marital assets. *See R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 301. Thomas wholly failed to demonstrate dissipation of marital assets; thus, the trial court properly refused to consider the fault of either party. The trial court did not err in failing to include an interest in the home inspection business as a marital asset.

Finally, Gloria urges that she is entitled to appellate attorney fees because Thomas' appeal is frivolous. The record reveals that the trial court's May 5, 1994 order denying Thomas' motion to correct errors required Thomas to advance Gloria's appellate attorney fees in the amount of $2,250.00 to be returned to Thomas from the proceeds of the sale of the marital residence.

■ An award of appellate attorney fees may be had when "a claim or defense is 'frivolous,' i.e., that it is taken primarily for the purpose of harassment, the attorney is unable to make a good faith and rational argument on the merits of the action, or the attorney is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law." *Smoot v. Smoot* (1992), Ind. App., 604 N.E.2d 618, 626. While Thomas' appeal largely requested a reweighing of the evidence, proscribed by our standard of review, such does not render the appeal frivolous. As in *Smoot,* the record contains evidence upon which Thomas could request review. An award of appellate attorney fees is not warranted on the basis that Thomas prosecuted a frivolous appeal.

The judgment of the trial court is affirmed.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.