In re the Marriage of James R. WEBB,
Appellant–Respondent,

v.

Nancy J. (Webb) SCHLEUTKER,
Appellee–Petitioner.

No. 48A02–0707–CV–568.

Court of Appeals of Indiana.

Aug. 15, 2008.

Irma Hampton (Nave) Stewart, Anderson, IN, Attorney for Appellant.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

James R. Webb ("Husband") appeals the trial court's treatment of the marital property in his dissolution from his wife, Nancy J. (Webb) Schleutker ("Wife"). Wife cross-appeals. The trial court did not abuse its discretion in including soon-to-be harvested crops in the marital pot and,

when assigning a value to the crops, subtracting the value of the Husband's labor in planting, harvesting, and otherwise caring for the crops. Further, it was not an abuse of discretion for the trial court to include in the marital pot crop subsidy payments from the United States Department of Agriculture ("USDA") earned before and during the period of the parties' separation, but paid during the period of the parties' separation. Finding no other error, we affirm.[1]

### Facts and Procedural History

Husband and Wife were married on June 24, 1978. Husband has an undergraduate degree from Purdue University in agricultural economics and works as a full-time farmer. Wife was a homemaker, helped out around the farm, and is currently working for Pioneer Hi–Bred International, Inc., an agricultural company. Husband and Wife have three children. The older two children have graduated from college and are emancipated, and the youngest is currently attending college.

Wife filed for divorce on August 9, 2005. The final hearing was held on December 20, 2006. At the final hearing, the parties submitted evidence regarding the value of the marital assets. The marital estate consisted of not only the marital residence, but also included farmland, farm equipment, and a hedge account with Rosenthal Collins Group, LLC ("RCG").

The trial court issued its dissolution decree on February 16, 2007. In the decree, the trial court put all the marital property in one pot and equally divided it, including crops that were growing in August 2005 at the time Wife filed for divorce and payments from the USDA through its farm income and commodity price support pro-grams. Husband was given most of the marital property, including the marital residence and farmland. The trial court consequently ordered Husband to make a $270,000 property equalization payment to Wife, with the stipulation that $150,000 of it be paid within ninety days of the final hearing and that Wife was entitled to stay at the residence for up to three months after Husband makes that initial payment. Appellant's App. p. 18. Husband now appeals, and Wife cross-appeals. Husband requested a stay of execution pending appeal, which the trial court granted.

### Discussion and Decision

Husband contends that the trial court abused its discretion in including in the marital pot growing crops and USDA payments, valuing the marital property, equally dividing the marital property, allowing Wife to remain at the marital residence for up to three months after Husband pays $150,000 of the property equalization payment, and awarding Wife appellate attorney fees. Wife cross-appeals contending that the trial court abused its discretion in decreasing the value of the crops by the value of Husband's labor.

### I. Crops and USDA Payments

Husband contends that the trial court abused its discretion in including in the marital pot growing crops and USDA payments. The trial court's dissolution decree provides:

> There is no question that the 2[0]05 crops were planted and were almost ready to be harvested when the dissolution was filed on August 9, 2005. There is no question as to the value of the crops (see Exhibit G). The dispute is with the expenses to harvest the crops.

1. We hereby deny Husband's "Motion for Leave to File Belated Reply to Appellee's Objection to Motion for Extension of Time to File Brief of Appellant and for Reconsideration of Court's Denial of Motion."

WIFE is no longer requesting any value for the alfalfa.

| | | |
|---|---|---|
| Corn | $ | 123,334.00 |
| Soybeans & | $ | 111,780.00 |
| U[SD]A | $ | 59,995.00 |
| | | $2[95],109.00 |

| | |
|---|---|
| Gross Crops | $295,109.00 |
| Farmer's Skill & Labor | (70,000.00) |
| Adjusted Gross Crops | $225,109.00 |

*Id.* at 13 (formatting altered).

 It is well-established in Indiana that all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4(a); *Beard v. Beard,* 758 N.E.2d 1019, 1025 (Ind.Ct.App. 2001), *trans. denied.* "[T]he determinative date when identifying marital property subject to division is the date of final separation, in other words, the date the petition for dissolution was filed." *Granzow v. Granzow,* 855 N.E.2d 680, 684 (Ind.Ct. App.2006). This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Thompson v. Thompson,* 811 N.E.2d 888, 914 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

 Here, when Wife filed the dissolution petition in August 2005, the crops were growing in the ground but not yet harvested. Although no Indiana case law has expressed the proposition that growing crops are marital assets, cases from other jurisdictions have. *In re Marriage of Mohr,* 260 Ill.App.3d 98, 197 Ill.Dec. 563, 631 N.E.2d 785, 789 (1994) (concluding that growing crops on leased land constituted marital assets: "To say that a spouse should not share in crops harvested after the marriage dissolution (but planted before the dissolution) can bring about an unfair result."); *In re Marriage of Martin,* 436 N.W.2d 374, 376 (Iowa Ct.App.1988) (concluding that crops growing on marital property may be considered marital assets separate from the value of the real estate); *Spauldin v. Spauldin,* 945 S.W.2d 665, 668–69 (Mo.Ct.App.1997) ("Annual crops raised by yearly labor and cultivation are fructus industriales, and are to be regarded as personal chattels, independent and distinct from the land, capable of a sale without regard to whether growing or matured. Therefore, growing crops are an asset to be divided in a dissolution of marriage, even when they are growing on marital property.") (quotation and citations omitted); *Kalkowski v. Kalkowski,* 258 Neb. 1035, 607 N.W.2d 517, 524 (2000) (declining to adopt any bright-line rule regarding the treatment of growing and stored crops as marital assets, the court nonetheless concluded that the trial court did not abuse its discretion in considering growing and stored crops as marital assets); *Raml v. Raml,* 499 N.W.2d 623, 624–25 (S.D.1993) (considering whether the trial court erred in valuing growing crops without taking issue with the trial court's conclusion that growing crops are a marital asset). We likewise conclude that growing crops are marital assets.[2]

---

**2.** In fact, although Indiana courts have never held that growing crops are marital assets, early Indiana cases established that crops growing in the ground but not yet harvested are personal property. *Salimonie Mining & Gas Co. v. Wagner,* 2 Ind.App. 81, 28 N.E. 158, 158 (Ind.Ct.App.1891) ("Growing crops planted by a tenant constitute personal property, for all practical purposes, to the same extent as the harvested product would be."); *Matlock v. Fry,* 15 Ind. 483, 484 (Ind.1860) (holding that ripe corn not yet harvested may

Because we conclude that growing crops are marital assets, the crops growing in the ground but not yet harvested on the date Wife filed the dissolution petition were properly included in the marital pot.

■■■ Additionally, the trial court did not abuse its discretion in considering the USDA payments as part of the value of the crops. According to Husband's brief, the $59,995 in USDA payments consist of Conservation Security Program payments and a federal subsidy to farmers. Appellant's Br. p. 41. The federal subsidy includes counter-cyclical payments and loan-deficiency payments determined by the anticipated underperformance of the market sales for corn and soybeans. *Id.* As the USDA payments are part and parcel of the value of the crops, the trial court did not abuse its discretion in this regard. Even if we were to consider the USDA payments as income separate from the value of the crops, these payments would still be included in the marital pot.[3] Husband's testimony shows that the USDA payments for the 2005 crop year were not fully disbursed until the following year:

> We have government payments received from August the 8th to December 31st of $21,427. Part of those payments would include a fall payment for counter cyclical, I believe its around 14 cents a bushel, based on your county average yield, number of based acres you have. It's not on your entire bushels, it's just on the government bushels that they consider you having. And then another payment was made in 2/16 of 200[6] and the final portion was made 10/12 of 2006, because we received the entire full payment for last year.

Tr. p. 196–97. The USDA payments were earned by the work done with the crops in 2005 but not fully received until 2006. The trial court did not abuse its discretion in including the USDA payments in the marital pot.

## II. Value of Property

■■■ Husband also contends that the trial court abused its discretion in valuing

be recovered under the statute for the recovery of personal property); *Sherry v. Picken*, 10 Ind. 375, 376 (Ind.1858) ("Growing crops, raised annually by labor, are personal property...."); *Bricker v. Hughes*, 4 Ind. 146, 148 (Ind.1853) ("Growing crops raised annually by labor, are the subject of sale as personal property, even before their maturity ....") (citing *Northern v. State ex rel. Lathrop*, 1 Ind. 113, 114 (Ind.1848)). More recently, this Court confirmed this proposition. *Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 317 (Ind. Ct.App.1987) ("Crops are emblements which are considered personal property."), *reh'g denied, trans. denied.*

**3.** We note that Husband's brief states, "a farmer is required to include [these USDA payments] on schedule F of the federal Income tax return for the year in which the farmer receives such payments." Appellant's Br. p. 41. His first citation refers us generally to a document that Westlaw notates as being 344 pages long, his second citation refers us generally to "IRS Revenue Rulings regarding such payments," and his third citation refers us to a six-page document that does not contain any information regarding how government payments should be recorded on federal income tax forms. *Id.* As we noted in *Barth v. Barth*, 693 N.E.2d 954, 956 (Ind.Ct.App.1998), *trans. denied,* we will not, on review, search through the authorities cited by a party in order to try to find legal support for its position. We will consider assertions of error to be waived where an appellant's noncompliance with our rules is so substantial that it impedes our consideration of issues on appeal. *Id.* at 957; *see also Howell v. Hawk,* 750 N.E.2d 452, 457 n. 3 (Ind.Ct.App.2001) ("We prefer to resolve cases on the merits; nevertheless, we remind counsel that improper citation could amount to failure to make a cogent argument and result in waiver of our consideration of an issue, and such citation does not facilitate our review of the merits.") (citations omitted).

the marital property. Specifically, Husband argues that the trial court abused its discretion in valuing the real estate, farm equipment, and RCG account. Wife cross-appeals contending that the trial court abused its discretion in decreasing the value of the crops by the value of Husband's labor. A trial court has broad discretion in valuing marital assets, and its valuation will only be disturbed for an abuse of that discretion. *Leonard v. Leonard,* 877 N.E.2d 896, 900 (Ind.Ct.App.2007). A trial court does not abuse its discretion as long as sufficient evidence and reasonable inferences exist to support the valuation. *Id.* If the trial court's valuation is within the scope of the evidence, the result is not clearly against the logic and effect of the facts and reasonable inferences before the court. *See Skinner v. Skinner,* 644 N.E.2d 141, 144 (Ind.Ct.App.1994). When determining the date upon which to value the marital assets, the trial court may select any date between the date of filing the dissolution petition and the date of the final hearing. *Deckard v. Deckard,* 841 N.E.2d 194, 200 (Ind.Ct.App.2006) (citing *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996)).

The trial court did not abuse its discretion in determining the value of the farm equipment. Wife submitted into evidence a First Farmers Bank & Trust balance sheet signed by Husband on May 1, 2005, indicating that the farm equipment was worth $317,360. Petitioner's Ex. 101. Husband submitted evidence that his farm equipment was worth $136,275. Respondent's Ex. F. The trial court's determination of the value of the farm equipment is an average between $317,360 and $136,-275 [4] and is therefore within the scope of the evidence. *See Cleary v. Cleary,* 582 N.E.2d 851, 852–53 (Ind.Ct.App.1991) (concluding that the trial court's method of averaging two values each reflecting the value of the husband's interest in corporations is not against the logic and effect of the facts before the court). Husband's argument that the value he recorded reflected farm equipment costs and not market values is without merit. The number he noted is directly under the column heading marked, "Mkt. Value." Petitioner's Ex. 101. Although Husband argues that his notations were untrained assessments not to be relied upon, his signature at the bottom of the page indicates that the balance sheet was to be used to disclose an accurate statement of his financial condition for the purposes of procuring credit. The trial court did not abuse its discretion in assigning the farm equipment a value of $226,818, which is within the scope of the evidence.

Further, the trial court did not abuse its discretion in valuing the real estate. Husband hired Lindley Comer

---

4. Handwritten under the number $136,275 is an indication that $4500 should be subtracted from that total. Husband testified that the number should be adjusted because the appraiser he hired to value the farm equipment, Castor, made a mistake:

> The farm equipment total was based on Castor's estimate of the value and there was one item in there that he had put down at $5,000 instead of $500. It was for a 4–wheel trailer that moves the corn heads around. I have two of them. One is at $500 and one is at $5,000, so there's a $4500 mistake on that item.

Tr. p. 186–87. Although the trial court acknowledged Husband's testimony, *id.* at 188, it did not deduct $4500 from the total of $136,275 while averaging the two farm equipment values. This is no error, as the trial court was entitled to disbelieve Husband on this point. Furthermore, because averaging the farm equipment values using $136,275 instead of $4500 less that value still results in a number within the scope of the evidence, we need not address the issue further.

and Walt Castor as appraisers. Comer and Castor appraised Tracts One through Five. Castor additionally appraised household items, farm equipment, shop tools, and automobiles. Wife hired Jeffrey Juday to appraise Tracts Three through Five. Castor appraised Tract One at $241,360, Petitioner's Ex. 2A p. 2, while Comer appraised it at $232,800, Respondent's Ex. A p. 2. The trial court's determination that Tract One is worth $240,000 is within the scope of the evidence and therefore not an abuse of discretion. Castor appraised Tract Two at $74,628, Petitioner's Ex. 2A p. 3, while Comer appraised it at $82,900, Respondent's Ex. A p. 2. The trial court's determination that Tract Two is worth $82,900 is also within the scope of the evidence and therefore not an abuse of discretion. Comer appraised Tract Three[5] at $304,900, Tract Four at $35,000, and Tract Five at $203,500. *Id.* Juday appraised Tract Three at $361,125, Tract Four at $37,500, and Tract Five at $226,250. Petitioner's Ex. 5 p. 2. The trial court's valuations of Tracts Three through Five at $333,013, $36,250, and $214,875, respectively, are averages between the appraisals done by Comer and Juday. All of the real estate values arrived at by the trial court are within the scope of the evidence and not an abuse of discretion. Husband's argument focusing on the relative expertise between appraisers asks us to reweigh the evidence, which we will not do.

■ The trial court also did not abuse its discretion in valuing the RCG account. Wife submitted the account's August 31, 2005, statement, which lists the "Ending Balance" at $14,279.97. Petitioner's Ex. 200C. Husband asserts that the total equity of the account on August 9, 2005 was $5,615.07. Appellant's Br. p. 38, 39; Tr. p. 266. The trial court's dissolution decree states, "The only dispute regarding the investments is the RCG account. In looking at Exhibit 200 C the ending balance is Fourteen Thousand Two Hundred Seventy-nine Dollars ($14,279.00), which the Court accepts." Appellant's App. p. 12. The trial court, having the authority to select any date between the date of filing the dissolution petition and the date of the final hearing as the date of valuation of marital assets, valued the account at $14,280. *Id.* at 13. August 31, 2005, is between August 9, 2005, when Wife filed the dissolution petition, and December 20, 2006, the date of the final hearing. As such, the trial court did not abuse its discretion in valuing the RCG account on this date.

Husband next submits that the net market value of the account on August 31, 2005, was $2,342.47. Appellant's Br. p. 38. Although the August 31, 2005, statement does show the "Converted Market Value" of the account to be $2,342.47, Petitioner's Ex. 200C, no evidence was before the trial court that this number should have been used to value the account instead of the "Ending Balance." Finally, although Husband testified that he had borrowed $10,000 from a relative to invest in the account, Tr. p. 267, the trial court was entitled to disbelieve this testimony.

The values arrived at by the trial court for the real estate, farm equipment, and RCG account are within the scope of the evidence. Husband's arguments ask us to reweigh the evidence and find that his values are the proper ones. We remain mindful of our standard of review and will not engage in reweighing the evidence. The trial court did not abuse its discretion

---

5. The trial court and Comer differ in their numbering of Tracts Three through Five. We adopt the numbering used by the trial court.

in determining the values of the real estate, farm equipment, and RCG account.

■■■■ Finally, regarding Wife's cross-appeal, the trial court did not abuse its discretion in decreasing the value of the crops by the value of Husband's labor. With regard to valuing marital property in dissolution proceedings, the value of growing crops is their value in matured condition less reasonable expenses. *In re Marriage of Martin,* 436 N.W.2d at 376. Here, the trial court reduced the value of the crops by $70,000, which reflected the value of Husband's labor. We find no abuse of discretion with the trial court doing so.

### III. Division of Property

Husband also contends that the trial court abused its discretion in equally dividing the marital property and by not considering the sale of a BMW automobile as dissipating assets.

■■■■ By statute, the trial court must divide the property of the parties in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4(a). An equal division of marital property is presumed to be just and reasonable. Ind. Code § 31–15–7–5. This presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.* The division of marital assets is a matter within the sound discretion of the trial court. *England v. England,* 865 N.E.2d 644, 648 (Ind.Ct.App.2007), *trans. denied.* "When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Hatten v. Hatten,* 825 N.E.2d 791, 794 (Ind.Ct. App.2005) (quotation omitted), *trans. denied.* When we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Hill v. Hill,* 863 N.E.2d 456, 462–63 (Ind.Ct.App.2007). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law or disregarded evidence of factors listed in the controlling statute. *Id.*

at 463. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

The trial court listed the following "Facts in Support of Equal Division" of the marital property:

> The earning ability of the parties, taking into consideration that Husband has a Bachelor's Degree from Purdue University, and he has the ability to earn substantially more income from the farming operation than the Wife will be able to earn from her office job with no college education.
>
> The economic circumstances of each spouse. Wife must purchase a home, and Husband has a home with no house payment. Further, although the Husband has substantial debt, he also has land, equipment, and other assets, which he has demonstrated he is able to mobilize into a highly successful farming operation. His ability to increase his income over the next several years is substantially greater than that of the Wife.
>
> This is a marriage of over twenty-eight (28) years.
>
> Although a portion of the real estate was inherited, it was inherited over twenty (20) years ago and the parties always treated the property as marital property.

The marital obligations have been paid by marital income and effort and although the Husband was the principle wage earner, the Wife provided primary care for the children, had responsibility for the home, and contributed in various ways to the well-being of the family and the farming operation.

Appellant's App. p. 15 (formatting altered) (capitalization omitted).

Here, Husband has not met his burden of showing that there should be an unequal division of assets. Although Husband inherited a substantial portion of the land during the marriage, the land was treated as marital property during the parties' twenty-eight years of marriage. Contrary to Husband's assertion that he alone purchased the rest of the land, Appellant's Br. p. 25, the trial court was entitled to believe Wife that it was purchased through marital funds.[6] Additionally, Wife has a lower earning capacity than Husband and contributed to the farming operation for the extent of their long-term marriage by helping with the farming and through her housekeeping services. Husband cites *Hunt v. Hunt,* 645 N.E.2d 634 (Ind.Ct.App.1994), for the proposition that a spouse is required to present evidence of the competency of his or her homemaking services when that spouse has not been a member of the workforce for much of the marriage and the decision not to work is not mutual. Appellant's Br. p. 28. *Hunt* stands for no such proposition.[7] Although Husband as-

---

6. In passing, Husband also asserts that the trial court abused its discretion by not considering a $28,500 personal injury settlement he brought into the marriage and used to purchase farm equipment. Appellant's Br. p. 30–31. Husband essentially argues that these facts support an unequal division of the marital property. Given the length of the marriage, the trial court did not abuse its discretion in equally dividing the marital property.

7. We note that here and in many other parts of Husband's brief, Husband fails to provide pinpoint citations. The lack of a pinpoint citation within the *Hunt* citation can be explained by the mere fact that nothing in the case supports the proposition that Husband puts forth. With regard to other missing pinpoint citations, we direct counsel for Husband to Appellate Rule 22 of the Indiana Rules of Appellate Procedure, which states that citations are to follow the format put forth in a "current edition of a Uniform System of Cita-

serts in his brief, "[Wife] offered no evidence as to the quality or extent of her homemaking efforts or of her primary care of the children," *id., Hunt* merely concludes that a spouse is not required to proffer evidence regarding the quality or extent of his or her homemaking services in order to obtain credit for contributing to the family during a marriage, *Hunt,* 645 N.E.2d at 636.

 Further, the trial court was not required to consider Wife's selling of the BMW as dissipating assets, as Husband asserts. Frivolous and unjustified spending of marital assets constitutes dissipation of those assets. *Grathwohl v. Garrity,* 871 N.E.2d 297, 303 (Ind.Ct.App. 2007). However, the doctrine of invited error precludes a party from complaining on appeal about an error it prompted. *Balicki v. Balicki,* 837 N.E.2d 532, 541 (Ind.Ct.App.2005) (citing *Witte v. Mundy ex rel. Mundy,* 820 N.E.2d 128, 133 (Ind. 2005)), *trans. denied.* At trial, Husband testified that he had no objection to the BMW being sold with no profit:

> Q: The part having to do with the other vehicles, the 2000 BMW automobile, the Court ordered that she was to pay for that provisionally and what not. Do you have any objection to it simply being shown as "sold no profit" as opposed to doing anything further with that with respect to her failing to abide by the initial order of the Court?
>
> A: No.

Tr. p. 190–91. Husband agreed to the status of the BMW as sold with no profit and therefore cannot now argue that the trial court should have assigned value to the BMW. Any error was invited.

We cannot say that the trial court abused its discretion in dividing the marital property and by not considering the sale of the BMW as dissipating assets.

## IV. Property Equalization Payment

 Husband contends that the trial court erred in allowing Wife to stay in the marital residence for a period of three months after Husband makes a $150,000 property equalization payment to her and that the value of the continued residence constitutes an impermissible award of maintenance. The trial court's dissolution decree states,

> Wife shall be entitled to live in the home for a maximum period of three (3) months after Husband pays Wife the sum of One Hundred Fifty Thousand Dollars ($150,000.00) as stated below.... Husband shall pay ... Two Hundred Seventy Thousand Dollars ($270,000.00) to Wife through the Madison County Clerk which shall be paid as follows:
>
> —One Hundred Fifty Thousand Dollars ($150,000.00) paid within ninety (90) days of the final hearing.
>
> —Remaining funds to be paid annually at a rate of Twenty Thousand Dollars ($20,000.00) until paid in full beginning April, 2008 and each April thereafter.
>
> —Eight percent (8%) interest on any payment not paid timely.
>
> —Wife shall have a lien on all of the real estate in the Husband's name until said sums are paid in full.

Appellant's App. p. 18 (formatting altered) (capitalization omitted).

 Maintenance ordered by a trial court in the absence of an agreement be-

tion (Bluebook).'' When referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. The Bluebook: A Uniform System of Citation R. 3.2(a), at 59 (Columbia Law Review Ass'n et al. eds., 18th ed.2005).

tween the parties consists of three types: incapacity maintenance for a spouse who cannot support himself or herself, rehabilitative maintenance for a spouse who needs additional education or training before seeking a job, and caregiver maintenance for a spouse who must care for an incapacitated child. *Balicki,* 837 N.E.2d at 542. Factors which tend to indicate an award of maintenance include the designation as maintenance, provisions terminating the payments upon the death of either party, payments made from future income, provisions for termination upon remarriage, provisions calling for modification based upon future events, and payments for an indefinite period of time. *Brinkmann v. Brinkmann,* 772 N.E.2d 441, 445 (Ind.Ct. App.2002). A property equalization payment, on the other hand, is intended to achieve an equal division of property. In ordering a property equalization payment, the court divides marital assets by "setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper." Ind.Code § 31–15–7–4(b)(2). Periodic payments are more in the nature of a property settlement if the payments are for a sum certain payable over a definite period of time, there are no provisions for modification based on future events, the obligation to make payments survives the death of the parties, the provisions call for interest, and the award does not exceed the value of the marital assets at the time of the dissolution. *Brinkmann,* 772 N.E.2d at 445.

In equally dividing the marital property, the trial court ordered Husband to allow Wife to stay at the marital residence for up to three months after Husband makes the $150,000 payment. Because there was no designation of this allowance as maintenance, no provisions terminating the payments upon the death of either party, no provisions for termination upon remar-

riage, and no provisions calling for modification based upon future events, we conclude that this is not maintenance but rather a way of instituting property division. There was nothing improper about the trial court allowing Wife a short period of time to secure new housing in order to accomplish the property division. As for Husband's assertion that the value of Wife's continued residence is an amount in excess of the marital estate, there is no indication that Wife's prerogative to stay at the marital residence for up to three months is over and above the equal division. Even if it were, in light of the value of the marital estate, we find that any imbalance in this regard is *de minimis.*

### V. Appellate Attorney Fees

Finally, Husband contends that the trial court abused its discretion in awarding Wife $4000 in appellate attorney fees. Indiana statutory law pertaining to dissolution proceedings authorize a court to order a party to pay the attorney fees of the other party:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

Ind.Code § 31–15–10–1(a). The legislative purpose of this statute is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *Maxwell v. Maxwell,* 850 N.E.2d 969, 975 (Ind.Ct.App.2006), *trans. denied.* We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. *Hartley v. Hartley,* 862 N.E.2d 274, 286 (Ind.Ct.App.2007). We consider such factors as the parties' relative resources, ability to engage in gainful employment,

and ability to earn an adequate income. *Maxwell*, 850 N.E.2d at 975.

The trial court initially found that Husband's 2005 adjusted gross income was $120,000. It noted that "his annual earning ability is approximately three times that of [Wife]." Appellant's App. p. 14. Although the trial court subsequently lowered Husband's 2005 adjusted gross income to $104,000 in response to a motion to correct errors, *id.* at 20, Husband's income is still substantially higher than Wife's income.

Husband's brief asserts that Wife should not be awarded appellate attorney fees because of her base pay and bonuses at Hi–Bred International, Inc., educational assistance, flex spending, stock options,[8] retirement benefits, deferred compensation with employer match, and health insurance. Appellant's Br. p. 13. However, Husband fails to establish that Wife's financial condition puts her in a better position than Husband. Given the income disparity between the parties, we cannot say that the trial court abused its discretion by ordering Husband to pay $4000 of Wife's appellate attorney fees.

The trial court did not abuse its discretion in including growing crops and USDA payments in the marital pot, valuing the marital property, equally dividing the marital property, allowing Wife to remain at the marital residence for up to three months following receipt of a portion of Husband's property equalization payment, and awarding Wife appellate attorney fees.

Affirmed.

MAY, J., and MATHIAS, J., concur.

---

8. We note that Husband has provided no evidence of his assertion that Wife receives flex spending and stock options. To the contrary, Wife testified that she does not participate in any flex spending or stock options. Tr. p. 76–77.