## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2016, 6:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

ATTORNEY FOR APPELLEE

R. Scott Hayes
Hayes Copenhaver Crider Harvey LLP
New Castle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tim Johnson,

*Appellant-Respondent,*

v.

Julie Johnson,

*Appellee-Petitioner.*

April 13, 2016

Court of Appeals Case No.
33A04-1508-DR-1007

Appeal from the Henry Circuit Court.
The Honorable Kit C. Dean Crane, Judge.
Cause No. 33C02-1404-DR-59

**Friedlander, Judge**

[1]     Tim Johnson appeals the trial court's distribution of marital assets between him and Julie Johnson.  Tim claims the court's distribution is unreasonable.  Under the circumstances of this case, the court's split of marital assets in favor of Julie is supported by statute and precedent, and we affirm.

[2]     Tim and Julie married in 1998. It was a second marriage for both of them, and they both had children from prior relationships. Tim and Julie did not have any children together.

[3]     Before they married, Tim moved into Julie's house ("the marital home"), which she had purchased in 1996, subject to a mortgage, during a prior marriage. Julie and her then-husband had made a down payment on the marital home using the equity from the sale of a prior house. Julie and her then-husband had purchased the prior house using a $10,000 gift from Julie's parents, among other sources of funds. In addition, Julie later received an inheritance of $36,741. She used that money to expand the property on which the marital home was located.

[4]     Tim and Julie both brought debt to the marriage. Julie owed her prior husband his share of the equity in the marital home, and Tim owed his father money and had credit card debt. Tim and Julie paid off all of those debts during their marriage. They both worked outside the home. In addition, they had a joint bank account, and Tim managed their money. Both of them contributed to paying the mortgage during the marriage.

[5]     In May 2012, Tim was charged in Henry County with molesting Julie's daughter. Tim and Julie separated at that time. In August 2013, prior to his criminal trial, Tim used marital funds to purchase a fifth-wheel trailer for $10,633. He hooked it up to a truck he had purchased during the marriage, put most of his personal items in the trailer, and left the state for Florida.

[6] Before he left Indiana, Tim took $1,400 out of a savings account he shared with Julie. He did not have her permission to make the withdrawal. In addition, while Tim was passing through Tennessee on his way to Florida, he accessed a line of credit that was secured by the marital home and withdrew $30,000 without Julie's knowledge or permission. Tim acknowledged he and Julie were jointly responsible for the line of credit, and if he could not pay, then she would be responsible for repaying the funds as well as making payments on their mortgage. Once Julie discovered Tim had drawn funds from the line of credit, she began to repay it while also making payments on the first mortgage. She expects to be able to pay off the line of credit in 2029, but she does not think she will be able to pay off the mortgage by herself in her lifetime.

[7] Tim did not return to Indiana for his criminal trial and was tried in absentia. During this process, he was arrested in Florida. At that time, he transferred the titles for the truck and fifth-wheel trailer to his mother, who lived in Florida. In addition, Tim transferred to his daughter from a prior relationship the title for a camper that belonged to him and Julie.

[8] Eventually, $18,000 of the $30,000 Tim withdrew from the line of credit was placed in his attorney's trust account. Tim spent the rest on truck repairs and living expenses in Florida.

[9] Julie filed a petition for dissolution while Tim's criminal case was pending. The parties jointly asked the trial court to issue a decree of dissolution of their marriage, reserving the division of the marital estate until later. On March 12,

2015, the court granted the request, dissolving the marriage but deferring a ruling on the distribution of marital assets.

[10] Next, the trial court held an evidentiary hearing. At the time of the hearing, Tim was incarcerated in the Indiana Department of Correction, serving a seventy-year sentence. He has a job, at which he earns twenty-five cents per hour or forty-three dollars per month. Some of his pay goes to pay for re-entry services, shoes, and some clothes. In addition, Tim would be required to contribute some of his pay for health care if necessary. Tim conceded he has no way to repay the $12,000 he spent from the $30,000 line of credit and cannot assist with the mortgage on the marital home.

[11] After the hearing, the trial court issued findings of fact and conclusions thereon. The court determined the facts justified an unequal division of marital property. Among other considerations, the court noted Tim's "transfer of the trailer, the Chevrolet Silverado, the pop up camper and the creation of a $30,000 debt in order to receive $30,000 cash, which Julie gets no benefit from, constitutes ample evidence of dissipation." Appellant's App. p. 12.

[12] The court granted Julie the marital residence subject to all debt, her retirement accounts, and two older, high-mileage vehicles. The court granted Tim certain items of personal property, as well as the $1,400 he withdrew from the savings account and the $30,000 he took from the line of credit. As for the $18,000 that was in Tim's attorney's trust account, the court directed that it be used to pay Tim's attorney's fees, with any remainder to be deposited in his prison

commissary account. The division amounted to a sixteen percent share of the marital estate for Tim and an eighty-four percent share of the marital estate for Julie. The court concluded, "In effect, Julie is only receiving her home, acquired by her before her marriage, now subject to a substantially higher debt, her personal property, two cars that are over 10 years old with high miles, and the right to receive her pension and 401-K someday." *Id.* at 15. This appeal followed.

[13] Tim claims the trial court erred in its division of marital assets, asserting he is entitled to half of the marital estate rather than sixteen percent. When a trial court divides marital assets, it must start by presuming "an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5 (West, Westlaw 1997). A party may rebut the presumption that an equal division is just and reasonable by presenting relevant evidence concerning the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.*

[14] The division of marital assets is a matter for the trial court's discretion, and we will reverse only for an abuse of discretion. *In re Marriage of Perez*, 7 N.E.3d 1009 (Ind. Ct. App. 2014). We consider only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Webb v. Schleutker*, 891 N.E.2d 1144 (Ind. Ct. App. 2008). A party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with Indiana Code section 31-15-7-5. *Id.* That presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.*

[15] Tim claims the trial court abused its discretion in concluding he dissipated marital assets, thereby justifying an unequal division of the marital estate. Specifically, Tim asserts that buying a trailer, withdrawing money from the line of credit, and moving to Florida did not amount to dissipation of marital assets.

[16] Dissipation is the frivolous or unjustified expenditure of marital assets. *Goodman v. Goodman*, 754 N.E.2d 595 (Ind. Ct. App. 2001). Factors to consider in determining whether dissipation has occurred include:

> 1. Whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage;
>
> 2. The timing of the transaction;
>
> 3. Whether the expenditure was excessive or de minimis; and
>
> 4. Whether the dissipating party intended to hide, deplete, or divert the marital asset.

*Id.*

[17] In this case, after Tim had been criminally charged, he left his job. Tr. p. 32. While his criminal case was pending and he was separated from Julie, he purchased a fifth-wheel trailer for $10,633, hitched it to a truck he had purchased during the parties' marriage, and left the state with most of his personal property. He also transferred the title of a pop-up camper to his daughter from a previous relationship. Tim took these marital assets for his own use without discussing the matter with Julie. When Tim was arrested in Florida, he signed the titles for the truck and trailer over to his mother, who also lived in Florida. There is no explanation as to why he could not have arranged to have those marital assets returned to Julie. Instead, one may reasonably infer Tim was attempting to keep the truck and trailer in Florida and out of Julie's possession.

[18] In addition, Tim took $1,400 from the parties' savings and withdrew $30,000 from a line of credit secured by the marital home. He did not consult with Julie about these withdrawals, much less seek her agreement. These transactions did not benefit the marital estate and instead amounted to a diversion of marital assets for Tim's sole benefit. Even worse, Tim's act of drawing on the line of

credit for his own use burdened the marital estate's primary asset, the marital home, with additional debt. Tim knew that without his assistance, Julie would be responsible for repaying the line of credit and the mortgage on the marital estate, but he absconded with the funds anyway. During his time in Florida he had no income, stating "I was done working." *Id.* at 29. Tim was only in his late forties at the time. He used $12,000 of the money for living expenses and appeared to have no intent of paying Julie back.

[19] This evidence amply demonstrates Tim expended marital assets without justification, and the trial court did not abuse its discretion in concluding he dissipated marital assets. *See Newby v. Newby*, 734 N.E.2d 663 (Ind. Ct. App. 2000) (no error in finding dissipation of marital assets where spouse converted funds from a joint account for personal use).

[20] In a related argument, Tim claims the trial court's award of the marital home and Julie's retirement accounts to Julie was disproportionate to the amount of marital assets he dissipated. We disagree. Tim fails to note that in awarding the marital home to Julie, the court required her to take on all of the pending debt as well. Although Tim is incarcerated, the court could have assigned a portion of the debt to him in the event he obtained a reduction in his sentence or was otherwise released from prison early. Next, Tim also fails to note he has hindered Julie's ability to retire by depriving the marriage of his income and by burdening the marital home with an additional $30,000 in debt from the line of credit. Julie testified she will pay off the line of credit by 2029, but she does not think she will be able to pay off the mortgage in her lifetime and will not be able

to retire. Under these circumstances, which are the result of Tim's dissipation of marital assets, the trial court acted within its discretion in awarding Julie a far greater share of the marital estate.

[21] Next, Tim argues the trial court gave Julie undue credit for the $10,000 gift she received from her parents to buy her prior house and the inheritance of $36,541, which she used to expand the property on which the marital home was located. He asserts these factors must be balanced against his payment of the mortgage during the marriage, his contribution to paying Julie's prior husband for his share of equity in the marital home, and his work on the marital home, including constructing a patio and other permanent improvements.

[22] We disagree with Tim's view of the evidence. Viewing the facts in the light most favorable to the judgment, he and Julie both contributed to mortgage payments after they were married. Tr. p. 66. Further, Tim contributed to paying Julie's prior husband, but he also brought debt to the marriage, which Tim and Julie paid off together. Tim did not attempt to quantify the value of his work on the marital home.

[23] In addition, the factors Tim offers are further outweighed by his unilateral and secret decision to take out $30,000 from the line of credit, secured by the marital home, after separating from Julie. He burdened the marital home with additional debt for his own personal purposes. The trial court was entitled to determine that Julie's contributions to the marital home from her parents' gift and her inheritance, plus Tim's burdening of the marital home for selfish

purposes, outweighed his contributions to the home. Tim's argument amounts to a request to reweigh the evidence, which we cannot do. *See Estudillo v. Estudillo*, 956 N.E.2d 1084 (Ind. Ct. App. 2011) (no abuse of discretion in unequal division of marital assets where husband transferred marital property to third parties immediately prior to separating from wife and admitted he did so to hide assets).

[24] In the alternative, Tim claims even if Julie was entitled to credit for the gift and inheritance that she used for the marital estate, the court should have awarded Julie only the improved equity in the residence rather than the residence and her retirement accounts. Tim does not cite any authority to support this argument, so it is waived. *See McKibben v. Hughes*, 23 N.E.3d 819 (Ind. Ct. App. 2014) (failure to support claim with citation to authority results in waiver), *trans. denied*. Waiver notwithstanding, the trial court awarded Julie the good with the bad: she gets the marital home, but she is solely responsible for the related debts, including the extra $30,000 unilaterally incurred by Tim.

[25] Finally, Tim argues the trial court improperly considered his lengthy prison sentence in dividing the assets, claiming the court "sought to punish [him] for his criminal acts and such punishment was already dispensed to [him] in his criminal case." Appellant's Br. p. 6. We disagree. When a court considers an unequal division of the marital estate, Indiana Code section 31-15-7-5 requires the trial court to take into account "the economic circumstances of each spouse at the time the disposition of the property is to become effective."

As a result, the trial court was required to consider Tim's incarceration and the resulting impact on his finances in the course of dividing the marital assets. Consequently, the court properly noted Tim's living expenses would be much lower than Julie's because the State is providing him with food, clothing, and shelter, potentially for the rest of his life. The record fails to reflect any intent on the part of the trial court to punish Tim for his criminal conduct. To the contrary, the court assigned all debt on the marital home to Julie, noting the court could not "in good conscience order Tim to pay anything during the next 35 years." Appellant's App. p. 12. Furthermore, the court directed that the $18,000 in Tim's attorney's trust account must be used to pay Tim's attorney's fees, with any remainder to be placed in his prison commissary account.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

Bradford, J., and Pyle, J., concur.