**James L. LEONARD, Appellant–Petitioner,**

v.

**Karen J. LEONARD, Appellee–Respondent.**

No. 49A05–0605–CV–263.

Court of Appeals of Indiana.

Dec. 14, 2007.

Steven F. Fillenwarth, Indianapolis, IN, Attorney for Appellant.

Dylan A. Vigh, Indianapolis, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Appellant–Petitioner James L. Leonard ("James") appeals from the trial court's Judgment and Decree of Dissolution of Marriage ("the Decree") in dissolution proceedings James instituted against Appellee–Respondent Karen J. Leonard ("Karen"). More specifically, James contests the portion of the Decree attempting to divide the parties' military and civilian pensions.

James raises the following restated issues for our review:

I. Whether the trial court erred in its award to Karen of the survivor benefit portion of James' military pension.

II. Whether the trial court erroneously awarded Karen a non-marital portion of an asset when the trial court modified the Decree.

III. Whether the trial court abused its discretion in dividing the disability portion of James' military pension.

James and Karen were married on May 19, 1978. James entered the United States Army on December 16, 1978. James filed his petition for dissolution of marriage on May 26, 2004. As of the date of filing, James had attained the rank of colonel and earned approximately $120,000.00 per year in his position as military base commander for the Department of Finance and Accounting Services ("DFAS"). As of the date of filing, Karen was employed as a civilian accountant for the DFAS earning approximately $80,000.00 per year.

The final hearing on James' petition began on June 28, 2005, continued on September 12, 2005, and concluded on November 29, 2005. As of the date of the final hearing, the two children of the marriage were emancipated for purposes of child support. Of the items of property and debt accumulated during the marriage, division of the parties' pension benefits was of particular concern below and here on appeal. James had accumulated a military pension with an accrued vested benefit as of the date of filing of $4,295.00 per month. Karen had also accumulated a pension through her employment as a participant in the Federal Employees Retirement System ("FERS"). Both parties presented expert witness testimony at the final hearing regarding how to calculate the present net value of James' military pension. The trial court took the matter under advisement.

On December 12, 2005, the trial court issued the Decree. The Decree divided the parties' retirement accounts, including James' military pension. Ultimately, the trial court decided to adopt a percentage distribution as permitted by 10 U.S.C. § 1408(a)(2)(C). In particular, the trial court found that the most reasonable approach for division of the pensions was to adopt a percentage distribution which resulted in an award to Karen of fifty percent of James' military pension as of the date of separation, May 26, 2004, and an award to James of fifty percent of Karen's full monthly Civil Service Retirement Annuity as of the date of separation, May 26, 2004.

Numerous motions and motions in opposition were filed by the parties after the entry of the Decree. Ultimately the trial court issued an order setting March 28, 2006 as the date for a hearing on James' motion to correct error and motion for relief from judgment. On March 28, 2006, the trial court held the hearing on James' motion to correct error and motion for relief from judgment. On April 25, 2006, the trial court issued an order resulting from the hearing on the motion to correct error. This appeal ensued.

We review a challenge to the trial court's division of marital property for an abuse of discretion. *Granzow v. Granzow*, 855 N.E.2d 680, 682–83 (Ind.Ct.App. 2006). In so doing, we consider only the evidence favorable to the judgment. *Id.* at 683. We will reverse the trial court only if its judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts. *Id.* When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1026 (Ind.Ct.App.2003). We may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

On June 28, 2005, Karen had filed a request for findings. However, on November 29, 2005, Karen withdrew her request. Thereafter, the trial court entered findings of fact and conclusions on its own motion when it rendered the judgment. In reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind.Ct. App.2004). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evi-

dence must leave us with the firm conviction that a mistake has been made. *Id.* Where the trial court issues sua sponte findings of fact and conclusions thereon, as we have here, the sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

First, James argues that the trial court erred by awarding the survivor benefit portion of James' military pension to Karen without charging her with the value of that benefit when dividing the marital estate. James argues that if the trial court's order is allowed to stand he will have to fund the cost of the benefit awarded to Karen without charging her for the value of that benefit.

Valuing a pension requires a court to determine (1) what evidence must be presented to establish the value of the benefit, (2) what date must be used to assign a dollar amount to the benefit, and (3) how much of the benefit's value was the result of contributions made after the final separation date. *Granzow*, 855 N.E.2d at 685. The trial court has discretion to set any date between the date of filing the dissolution petition and the date of the final hearing as the date for marital property valuation. *Id.* When a trial court engages in valuing assets in the course of acting on a dissolution action, it has broad discretion, and its valuation will only be disturbed for an abuse of that discretion. *Id.* So long as there is sufficient evidence and reasonable inferences to support the valuation, an abuse of discretion does not occur. *Id.*

The court shall presume that an equal division of the marital property between the parties is just and reasonable. Ind.

Code § 31–15–7–5. However, that presumption may be rebutted. *Id.*

In the present case, the trial court chose to divide the marital portion of each party's pension in half. In other words, Karen and James received half of each other's pensions. Furthermore, each party was required to provide a survivor's benefit annuity. The trial court's orders required the cost of funding the survivor benefit annuity to come off the top of the marital portion of the respective pensions. Therefore, each party was paying for half of the premium or actuarial cost of each of the survivor annuities.

 James correctly notes that his survivor benefit plan is a marital asset. Likewise, Karen's survivor benefit annuity is a marital asset. The trial court evenly split the burden of the premiums between the parties, and required each party to provide survivor benefits to the former spouse.

As the Supreme Court of Appeals of West Virginia noted in *Smith v. Smith,* 190 W.Va. 402, 438 S.E.2d 582, 584 (1993),

> The survivor benefit plan is designed to provide financial security to a designated beneficiary of a military member, payable only upon the member's death in the form of an annuity. Upon the death of the member, all pension rights are extinguished, and the only means of support available to survivors is in the form of the survivor benefit plan.

The trial court did not err by requiring each spouse to provide a survivor benefit for their former spouse, and equally divide the burden of the premiums or actuarial costs of those benefits.

 James next argues that the trial judge erred when she approved Karen's proposed Military Qualifying Court Order ("MQCO") because it varied from the language in the Decree and from the court's

ruling from the bench regarding the division of James' military pension. James claims that the trial court erroneously modified its decree without authority or explanation.

The original decree provided as follows:

> [t]he most reasonable approach for division of the respective military and civilian pensions is to adopt a percentage distribution as permitted by 10 USC § 1408(a)(2)(c). The Court awards Wife Fifty Percent (50%) of Husband's military pension payable as of the date of separation, more specifically May 26, 2004.

Appellant's App. p. 27. Furthermore, the trial judge stated from the bench, at the March 28, 2006 hearing, that she was not using the coverture method of dividing the pension, but was awarding the value of half at the time of filing.

The MQCO signed by the trial court states in relevant part as follows:

> This Order assigns to the Former Spouse an amount equal to Fifty Percent (50%) of the Marital Portion of the Member's gross military retired pay under the Plan *as of the Member's benefit commencement date,* as if the amount of the Member's gross pay which is allocable to the Member's VA waiver and the cost of funding SBP were both considered part of the Member's taxable retirement pay, less the cost of funding SBP at the maximum level of wage for the Former Spouse's interest provided by this Order. (For illustration purposes, if the Member's gross military retired pay were $5,000.00, the amount included as VA waiver were[sic] $200.00, and the cost of the SBP annuity for the Former Spouse's share were[sic] $400.00, the Marital Portion would be $2,300.00, which is 50% of a sum equal to $5,000.00 less $400.00.)

WIFE, the Former Spouse, is awarded 50% of the disposable military retired pay the Member would have received had the member retired on his actual retirement date with the rank of O–6 and with 25.412 years of creditable service. (Emphasis supplied).

Appellant's App. pp. 97–98.

The trial court's adoption of the language in Karen's proposed MQCO was erroneous. First, in the Decree, the trial court used the date of separation, or May 24, 2004, to determine the value of the numerous assets of the parties. As noted above, the trial court stated from the bench and in the decree, that the value of James' military retired pay was to be determined as of the date of separation, or May 24, 2004. To the extent that the language in the MQCO changes the valuation date, it is in error.

■ Additionally, the MQCO awards Karen 50% of the disposable military retired pay James would have received had he retired on his actual retirement date with the rank of O–6 and with 25.412 years of creditable service.

■ 10 USC § 1370(a)(2)(A) provides in relevant part as follows:

In order to be eligible for voluntary retirement under any provision of this title in a grade above major or lieutenant commander, a commissioned officer of the Army, Navy, Air Force, or Marine Corps must have served on active duty in that grade for not less than three years, except that the Secretary of Defense may authorize the Secretary of a military department to reduce such period to a period not less than two years.

James had achieved the rank of full colonel, or O–6, in August of 2001, and remained at that rank at the time of separation. However, James had been in active duty in that grade for two years and ten months. Therefore, James' grade should be O–5, or that of a lieutenant colonel. However, this error is harmless because the figure used by the valuation experts and by the court in the decree was $4,295.00 per month. That is the correct value of the benefit based upon the grade of lieutenant colonel. The parties agreed that James had 25.412 years of creditable service. Therefore, it is necessary to remand this matter to the trial court to correct James' grade to O–5.

Last, James advances the argument that the trial court abused its discretion in dividing the VA disability portion of James' military pension.

■ In *Griffin v. Griffin*, 872 N.E.2d 653, 658 (Ind.Ct.App.2007), a panel of this court, following the United States Supreme Court opinion *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("*Mansell I*"), held that state courts do not have the authority to treat military retirement pay that has been waived to receive veterans' disability benefits as property divisible upon divorce. In addition, 10 USC § 1408 defines "disposable retired pay" in relevant part as the total monthly retired pay to which a member is entitled less amounts which are deducted as a result of a waiver required in order to receive veterans' disability benefits. The illustration contained in the MQCO appears to include the veterans' disability benefits in the disposable retired pay.

(For illustration purposes, if the Member's gross military retired pay were $5,000.00, the amount included as VA waiver were[sic] $200.00, and the cost of the SBP annuity for the Former Spouse's share were[sic] $400.00, the Marital Portion would be $2,300.00,

which is 50% of a sum equal to $5,000.00 less $400.00.)

Appellant's App. pp. 97–98. To the extent the MQCO appears to divide any veterans' disability benefits James may be entitled to, the trial court erred. Therefore, we reverse and remand this matter to the trial court on this issue.

Affirmed in part, reversed and remanded in part.

RILEY, J., and MAY, J., concur.