

FILED

Jan 27 2016, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jonathan R. Deenik
Cross Pennamped Woolsey
& Glazier, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE

C. Richard Marshall
Columbus, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In Re the Marriage of:

Courtney Carr,

*Appellant-Petitioner,*

v.

Beth E. Carr,

*Appellee-Respondent*

January 27, 2016

Court of Appeals Case No.
03A01-1505-DR-436

Appeal from the Bartholomew
Superior Court

The Honorable Kathleen Tighe
Coriden, Judge
The Honorable Timothy Day,
Special Judge

Trial Court Cause No.
03D02-1310-DR-5399

**Baker, Judge.**

[1] Courtney Carr appeals the trial court's dissolution order, which, in part, did not count the survivor benefit plan feature of his military pension as a marital asset. Finding that the survivor benefit plan should have been counted as a marital asset, we affirm in part, reverse in part, and remand with instructions to recalculate the asset distribution.

## Facts

[2] Courtney Carr (Husband) and Beth Carr (Wife) were married on October 11, 1997. On October 8, 2013, Husband filed a petition to dissolve the marriage. The trial court held a dissolution hearing on February 26, 2015. The parties were able to agree on most of the issues arising from the dissolution, including the custody of their two children and the disposition of much of their marital property, and so we will focus our attention on the facts relevant to this appeal.

[3] Husband had worked in the military for fourteen years prior to the marriage, and continued to work there during the marriage. Although he began earning his military pension before marrying Wife, that pension vested during their marriage. Also before the marriage, he had worked for, and earned a pension from, a private company named Rock Tenn.

[4] While both parties made significant contributions to the acquisition of marital assets, Husband made more economic contributions and Wife made more non-economic contributions. Husband's then-current deployment was set to end in May 2015, at which time he expected to find a less remunerative job in

Columbus, Indiana. Even with the reduction in income, Husband's earning capacity is far greater than that of Wife.

[5] Husband and Wife disagreed over the value and treatment of Husband's military and civilian pensions. They retained an expert, Dan Andrews, to calculate the value of these assets. The parties agreed that Husband would elect a survivor benefit as part of his military pension, to be received by Wife in the event of Husband's death, in the amount of $2,750 per month. Andrews testified that the present value to Wife of receiving these payments was $226,443.86. He also testified that the total present value of Husband's military pension after this election[1] was roughly $1.2 million. Husband earned a total of 6,103 points toward this pension, 3,025 of which he earned prior to the marriage and 3,078 of which he earned during the marriage. Andrews testified that if the coverture formula[2] were applied, the portion of the military pension earned during the marriage equaled 50%.

[6] Wife argued that the coverture fraction should not be applied—she contended that Husband's military pension had vested during the marriage; that her non-economic contribution to the household enabled him to continue in the military; that if he had quit the military, he would be entitled to no pension;

[1] By making the election, Husband agreed to receive lower monthly pension payments during his lifetime.

[2] The coverture formula "is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued." *In re Marriage of Preston*, 704 N.E.2d 1093, 1098 n.6 (Ind. Ct. App. 1999).

that she counseled him to maximize his retirement benefits; and that, therefore, she should be entitled to half of the $1.2 million total. The trial court, however, disagreed with Wife, applied the coverture share, and granted her half of the coverture share; Wife received half of half of the total military pension, or a present value of $315,463.54. Appellant's App. 16. The trial court also applied a coverture share to Husband's civilian pension, which was roughly one-third of the total. The trial court, utilizing Andrews's calculations, found the coverture share of the civilian pension to be $36,234. Again, the trial court awarded half of this—$18,117—to Wife.

[7] The parties also disagreed over whether the survivor benefits should be counted as a marital asset. The trial court ruled that they would not: "The election for such benefits was not agreed upon until after the dissolution was filed. It is speculation whether Wife will ever even collect survivor benefits or how much she might receive. To do so, she must live longer than Husband." Appellant's App. 13. Accordingly, while ratifying the parties' agreement to grant the survivor benefits to Wife, the trial court did not count the survivor benefit as a marital asset, nor did it list it in its summation of assets to be given to Wife.

[8] The trial court acknowledged the presumption in favor of an equal division of the marital estate, but found reason to deviate from a precise split. Based on Wife's smaller earning capacity, the trial court found that an equal division would not be just and reasonable, but that a sixty/forty split in Wife's favor would be equitable. While the two pensions were divided evenly, the other assets were shifted in favor of Wife such that she ended up with $804,888.14 of

the total marital estate of $1,349,633.04. Finally, the trial court awarded attorney fees to Wife. Husband now appeals.

## Discussion and Decision

[9] Husband raises two issues on appeal, which we consolidate into a single issue: whether the trial court erred by not counting the survivor benefit plan portion of the military pension (the SBP) as a marital asset with a value of $226,433.86.

[10] Husband argues that the parties stipulated the SBP's value and treatment; that an agreement by parties in open court to do or not do a thing is ordinarily binding, *State ex rel. Burdge v. Cummings*, 208 Ind. 292, 295, 195 N.E. 879, 880 (1935); and that, therefore, the trial court's decision to rule otherwise was error. Husband contends that, by not treating the SBP as a marital asset, the trial court gave Wife a windfall in excess of the sixty/forty split. Husband cites *Thompson v. Thompson*, 811 N.E.2d 888, 915 (Ind. Ct. App. 2004), for the proposition that where omissions of marital assets cause the actual property distribution to deviate from the ratio set by the trial court, a proper remedy is to remand the cause to the trial court to recalculate the property division.

[11] We note initially that our dissolution scheme depends on the inclusion of all marital assets in the marital pot. This "one-pot" theory insures that all assets are subject to the trial court's power to divide and award. *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007). The systematic exclusion of any marital asset from the marital pot is erroneous. *Wilson v. Wilson*, 409 N.E.2d 1169, 1173 (Ind. Ct. App. 1980).

[12] The only Indiana case to deal with a military pension survivor benefit plan stated, "James correctly notes that his survivor benefit plan is a marital asset. Likewise, Karen's survivor benefit annuity is a marital asset." *Leonard v. Leonard*, 877 N.E.2d 896, 901 (Ind. Ct. App. 2007). We affirmed the trial court's decision to award each spouse's survivor benefit to the other spouse. *Id.*

[13] Wife argues that this statement was a passing comment made "without discussion, analysis, or supporting authorities." Appellee's Br. 20. She argues that the SBP is not a marital asset. For the purposes of determining whether an asset is marital property, vesting is both a necessary and sufficient condition for a right to a benefit to constitute an asset. *Bingley v. Bingley*, 935 N.E.2d 152, 155 (Ind. 2010). She argues that since her right to the SBP had not vested, and could only vest in the event of Husband's death, the SBP should not be counted as a marital asset.

[14] Formerly, courts adopted a similar argument to exclude any pension from the marital pot. For example, in *Savage v. Savage*, we rejected a wife's claim that her husband's pension should be counted as marital property, reasoning that that husband "had only a contingent future interest rather than a vested present interest in the payments. He was not entitled to receive payment of his pension on demand, but rather was required to wait for monthly payments which were contingent upon his continued survival." 176 Ind. App. 89, 92, 374 N.E.2d 536, 538-39 (1978). This reasoning is now defunct, and pensions without the right of payment on demand are counted as a marital asset. *See Hill*, 863 N.E.2d at 461 n.5 (holding *Savage* to be superseded by statute).

[15]     Wife is correct that vesting is a necessary condition for an asset to be considered marital property. But an evaluation of case law reveals that it is the pension-earner's right to the pension that must vest. *See Harris v. Harris*, 31 N.E.3d 991, 997-98 (Ind. Ct. App. 2015) (holding that a military pension was not marital property where pension-earner's right to the pension vested three years after dissolution of the marriage). There is no dispute in this case that Husband's right to the pension vested during his marriage with Wife.

[16]     Wife is correct that there is uncertainty whether she will ever receive the SBP. But this same uncertainty exists with any pension without a provision for survivor benefits—if the pension-earner dies before the other spouse, pension payments cease. And if the right to the pension vests in the pension-earner during marriage but before retirement, the present value of the pension might be included as marital property despite the fact that neither party would receive any of it if the pension-earner died before retirement. This was the rationale used by early pension cases like *Savage* that has been jettisoned by modern pension cases like *Hill*. The uncertainty regarding the SBP does factor into the analysis: but, as with pensions generally, it factors in to change the value assigned to the SBP, rather than to nullify the SBP's status as marital property. The value of the SBP in this case, however, is not at issue; both parties unambiguously stipulated to the value to be assigned to it.

[17]     We also note that both parties listed the SBP and its value as a marital asset in their proposed asset distribution. Respondent's Ex. F; Petitioner's Ex. 11. The parties initially disagreed over its value: Wife listed its value as $226,443.00 and

Husband listed its value at $117,492.15. The parties stipulated to the former figure at trial. Tr. 137.

[18] Husband argues that these proposed distributions, along with the colloquy that took place at the dissolution hearing, constituted a stipulation to treat the SBP as a marital asset. As noted, the parties did stipulate to the value of the SBP. Searching the record, however, we find no unambiguous stipulations regarding the treatment of the SBP. The general tone of the stipulations made at trial can be gleaned from one stipulation made by counsel for Wife when he said, "I agree with Professor Andrew's analysis of whatever." Tr. 140. We hesitate to say that such a statement is akin to a legally binding agreement.

[19] But this argument does suggest public policy reasons to treat the SBP as a marital asset. Both parties fully expected the SBP to be counted as a marital asset, and both parties expected the value to be counted as an asset going to Wife. To hold that SBPs are not marital property would be to remove any incentive a pension-earner would otherwise have to elect the benefit. By making the election, the pension-earner reduces the income he or she would have received during his or her lifetime; if the SBP is not counted in the marital pot, the pension-earner would clearly benefit financially by not making the election. Electing a SBP provides value to the other spouse, which the law acknowledges by counting that value as part of the marital pot.

[20] In this case, when the SBP is added to the marital pot, the total pot has a value of $1,576,076.90, of which Wife received $1,031,332, or a little more than 65%.

On remand, the trial court should either make new findings justifying a sixty-five/thirty-five split, rather than the sixty/forty split, or should reallocate marital assets from Wife to Husband to bring the actual allocation into conformity with the previously-decided sixty/forty split.

## Attorney Fees

Along with her brief, Wife filed a motion for attorney fees, arguing that Husband's argument regarding the alleged stipulations was "an egregious and outrageous attack of overwhelming fabrication." Appellee's Motion for Appellate Attorney Fees at 2. Needless to say, given that Husband has won on appeal, we deny this motion in an order separate from this opinion.

We note, however, that the trial court retains discretion to award additional attorney fees on remand. An award from the Court of Appeals serves a different purpose than an award from the trial court. Whereas we award attorney fees only to discourage frivolous appeals made in bad faith, Appellate Rule 66(E), the purpose behind the trial court's award of attorney fees in the context of marriage dissolution is to enable access to an attorney by a party who would not otherwise be able to afford one. *Thompson*, 811 N.E.2d at 928; Ind. Code § 31-15-10-1. And whereas the trial court has substantial discretion to insure this access, we exercise our Rule 66(E) power with extreme restraint because of the potential chilling effect upon the exercise of the right to appeal. *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 384 (Ind. Ct. App. 2012).

# Conclusion

[23] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to (1) count the SBP as a marital asset and (2) either (a) make findings justifying a sixty-five/thirty-five split or (b) reallocate the marital assets in accordance with a sixty/forty split.

Bradford, J., and Pyle, J., concur.