## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 29 2016, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Paul L. Jefferson | Perry D. Shilts |
| Jefferson & Brewer, LLC | Katherine Ridenour |
| Indianapolis, Indiana | Shilts Law Office |
| | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Darren L. Simmons,
*Appellant-Respondent,*

*v.*

Michelle D. Simmons,
*Appellee-Petitioner.*

February 29, 2016

Court of Appeals Case No.
92A03-1106-DR-288

Appeal from the Whitley Superior Court

The Honorable James R. Heuer, Special Judge

Trial Court Cause No. 92D01-0906-DR-199

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Respondent Darren Simmons ("Husband") and Appellee-Petitioner Michelle Simmons ("Wife") married in 1992, and Wife petitioned for dissolution in June of 2009.  Husband worked for the Simmons Company, LLC ("the Company"), of which he owned a 50% share and where he worked with his brother (and Company co-owner) Brent Simmons and Brent's wife Sarah.

In 2007, Husband and Wife had bought an H&R Block Franchise ("the Franchise") for $450,000.00, with the intent that Wife would operate it and draw an income. As of early 2011, Wife had yet to draw a steady income from the Franchise, and its outstanding debt was $483,598.00.

In 2008, Husband obtained a check from the Company to purchase property in Columbia City ("the Property") from Wife's mother, who, instead of deeding the Property to the Company, deeded it to Husband and Wife. In March of 2009, the parties purchased the former marital residence ("the Marital Residence"), then valued at $450,000.00, taking on mortgage loan debt of $378.000.00. By the time of the final dissolution, this debt had risen to $407,000.00.

After Wife filed a petition for dissolution of her marriage to Husband, a dispute arose regarding ownership of the Property, with the Company apparently indicating that it wished to obtain title. Wife told both Husband and Brent that she was willing to deed the Property to the Company. Despite this, after Wife filed for dissolution, the Company sued her and her mother, seeking the transfer of the Property.

In January of 2011, the trial court held a final hearing on the dissolution. Husband testified, and the trial court found, that his interest in the Company was now 44%. *Inter alia*, the trial court (1) assigned the Franchise to Wife and valued it at $0.00; (2) assigned the Marital Residence to Husband and valued it at the outstanding mortgage loan balance, or $407,000.00; and (3) ordered Wife to transfer title to the Property to the Company and ordered Husband to cause

the Company to dismiss its suit against Wife and her Mother. Husband argues that the trial court abused its discretion in valuing the Franchise and the Marital Residence and in ordering him to cause the Company to dismiss its lawsuit. We conclude that the trial court did not abuse its discretion in valuing the marital assets. However, we agree with Husband that the trial court erred in ordering Husband to cause the Company to dismiss its lawsuit. Consequently, we affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On August 29, 1992, Husband and Wife married and, during their marriage, had four children.[1] Wife filed for dissolution on June 30, 2009. Husband works for the Company, as do Brent and Sarah. Wife testified that Husband owned a 50% share in the Company on the date of filing and Husband testified that he owned a 44% interest on the date of the final hearing.

In 2007, Husband and Wife purchased the Franchise for $450,000.00; the parties borrowed $350,000.00 from Crossroads Bank and $145,000.00 from Wife's uncle Robert James Miller. Although Wife had been using Franchise funds to make annual debt-service payments of between $48,000.00 and $58,000.00, at the time of Wife's filing for dissolution, the Franchise's outstanding total loan balance was $483,598.00. Wife testified that she had not drawn a steady salary from the Franchise since its purchase but hoped, after a

---

[1] Neither custody nor support of the children is at issue in this appeal.

possible refinancing, to draw an annual salary of $30,000.00 in the future. Husband testified that the value of the Franchise was $100,000.00, while Wife valued it at -$77,000.00 as of July 31, 2009.

[7] In 2008, Husband obtained a check from the Company to purchase the Property from Wife's mother, who, instead of deeding the Property to the Company, deeded it to Husband and Wife. At some point, a dispute arose regarding ownership of the Property, with the Company apparently indicating that it wished to obtain title. Wife told both Husband and Brent that she was willing to deed the Property to the Company and that all they had to do was "get me the paperwork and I'll sign it over[.]" Tr. p. 353. Despite this, after Wife filed for dissolution, the Company sued her and her mother, seeking the transfer of the Property. Brent testified that he made the decision to bring suit.

[8] In 2009, the parties purchased the Marital Residence, and the original amount of the mortgage loan was $378,000.00. In a financial statement filed April 1, 2009, the Marital Residence was valued at $450,000.00. At the time of filing of the dissolution petition on June 30, 2009, the mortgage loan balance on the Marital Residence had been paid down to $369,000.00. In December of 2010, the parties entered into an agreement to sell the Marital Residence for $360,000.00, which sale never actually occurred due to Husband's actions. By the time of the final hearing, the mortgage loan balance had risen to $407,000.00. Neither party introduced any appraisal evidence regarding the Marital Residence's current value during the dissolution proceedings.

[9] On January 25, 2011, the trial court heard evidence in a final hearing. On May 25, 2011, trial court issued its dissolution decree, which provides, in part, as follows:

> 3. Wife is 41 years of age and Husband is 42 years of age at the time of the final hearing held on January 25, 2011.
>
> 4. The parties were married on August 29, 1992. During their marriage, four children were born[.]
>
> * * * *
>
> 8. In 2007, Wife and Husband decided to purchase the Whitley County H&R Block franchise, with the intention of having Wife operate that business. Although Wife has made a number of withdrawals from that business, most especially in 2009 when the parties were finishing construction of their new marital Marital Residence, this franchise has not paid Wife a salary nor provided her a steady income. Wife testified that though she received little or no benefit from the operation of the H&R Block franchise in 2010, she intends to refinance the loan, and as a consequence, would hope that she could earn a $30,000.00 per year income from her operation and management of this business. Wife has been unable to repay any significant amount toward the loan received from family member, Robert James Miller, to assist her and her husband in the purchase of this business. In fact, since she initially borrowed $145,000.00, she has had to borrow additional sums from family member, Robert James Miller, to assist the cash flow of this business.
>
> * * * *
>
> 10. Husband has been involved in the construction trades his entire life. Prior to the divorce being filed, Husband was paid $102,000.00 per year, plus his employer, the Simmons Company, LLC (hereinafter "Simmons Company"), rented his 2004 Ford 350 pickup truck for an amount equal to the loan payment of $600.00 per month and allowed Husband the use of another 2008 Ford 350 pickup truck for his personal and business use. Husband's gasoline expenses of $600.00-$800.00 per month

are paid by the Simmons Company as an additional benefit of employment. Husband's brother, Brent, who is also an employee of the Simmons Company, is paid a similar wage and presumably receives similar other employment benefits.

11. Prior to the divorce filing, Husband and his brother, Brent, arranged for each of their wives to be paid $34,000.00 per year salary for nominal and miscellaneous employment services for the Simmons Company. After Wife filed this divorce action, Husband immediately terminated Wife's receipt of this $34,000.00 per year salary, though [Sarah] continues to receive this amount of salary per year for nominal and miscellaneous employment services.

        *     *     *     *

30. This Court, taking into consideration all of the evidence presented, now determines that the following assets and debts of the marital estate have the following values or amounts owing:

(ASSETS AND SECURED DEBTS)

a) The former marital Marital Residence at 3355 S. 150 E., Columbia City, Indiana, has a fair market value which approximates the mortgage balance owing to Crossroads Bank. There is no equity in this asset which shall be awarded to Husband subject to the security interest of Crossroads Bank. The Court notes that there was no appraisal of the marital real estate.

        *     *     *     *

v) With Husband's consent, Wife purchased the Whitley County H&R Block franchise in 2007. The purchase price was $450,000.00. $350,000.00 was borrowed by the parties from Crossroads Bank. Another $145,000.00 was borrowed from Robert James Miller, an uncle of Wife's. (Wife's Exhibit 15.) On the date that the divorce was filed; the loan to Crossroads Bank had been reduced to $298,000.00, but the amount owing to Robert James Miller had risen to $185,598.00, due in part to an additional loan that Wife received after the purchase of the business, but before the filing of the divorce action. (Wife's

Exhibit 16.) Wife does acknowledge having made withdrawals from the H&R Block business since its purchase, but these withdrawals were generally to assist in the payment of expenses relating to the construction of the parties' new Marital Residence and not income generated from the successful operation of the business. These withdrawals necessitated additional borrowings from Robert James Miller and prevented repayment of the loan to Robert James Miller. Husband identifies a $100,000.00 value for Wife's interest in the H&R Block franchise, but provided this Court no basis for that valuation other than his belief that Wife would be successful in its operation going forward in time. While Wife advocates a negative value to her interest in this business, this Court declines to do so. For purposes of this dissolution action, Wife's interest in the H&R Block franchise is valued at zero dollars ($0.00).

\* \* \* \*

TOTAL ASSETS (NET OF SECURED LOANS)
IN MARITAL ESTATE:                                      $760,196.00


TOTAL UNSECURED DEBTS IN
MARITAL ESTATE:                                         $30,848.00


MARITAL NET WORTH:                                      $729,348.00

\* \* \* \*

33A. Wife shall be awarded ownership of the following assets free and clear of any claim by Husband thereto:

|     |     |     |
| --- | --- | --- |
| a)  | Wife's portion of the household and furnishings | $20,000.00 |
| b)  | Wife's 1999 Plymouth Dodge minivan | $2,700.00 |
| c)  | The 2005 GMC Yukon Denali | $2,705.00 |
| d)  | Wife's Pro Fed Checking Account #4268 | $120.00 |
| e)  | Wife's H&R Block business Checking Account #8265 | $17.00 |
| f)  | Wife's H&R Block business | $0.00 |
| g)  | Wife's The Simmons Company 401(k) Retirement Plan | $3,604.00 |

| | | |
|---|---|---|
| h) | Wife's Ameriprise IRA Account #2762 | $131.00 |
| i) | Wife's Hartford Union Security Ins. Co. Policy cash surrender value | $277.00 |

Wife's Total Assets:                          $24,144.00

B.      Wife shall be ordered to timely and completely pay and hold Husband harmless in all respects, including attorney fees, the following debts:

| | | |
|---|---|---|
| a) | Wife's Macy Store Charge Card Account #7289 | $218.00 |
| b) | Wife's Kohl's Store Charge Card Account #4264 | $897.00 |
| c) | Wife's Sears/CVSD Account #8114 | $1,292.00 |
| d) | Wife's Macy's Visa Account #5268 | $2,987.00 |
| e) | Wife's Discover Card Account #3530 | $2,664.00 |
| f) | Wife's Citi Platinum Select Card Account #5726 | $5,956.00 |
| g) | Parkview Whitley Hospital Account #7408 | $283.00 |
| h) | MDS Properties, LLC First Equity Visa Account #8055 | $541.00 |
| i) | Dr. Timothy Bussick | $1,917.00 |

Wife's total debts                          $16,755.00

C.  NET:                          $7,389.00

34A.   Husband shall be awarded ownership of the following assets free and clear of any claim by Wife thereto:

| | | |
|---|---|---|
| a) | Former marital Marital Residence at 3355 S. 150 E. Columbia City, IN | $0.00 |
| b) | Husband's V2 interest in "Granny's Land'' at 1910 E. Kaiser Road Coiumbia City, IN | $36,488.00 |
| c) | Rental house at 1936 E. 3rd Street, Fort Wayne, IN (net) | $18,507.00 |

| | | |
|---|---|---|
| d) | Rental house at 408 E: Van Buren Street, Columbia City, IN (net) | $29,636.00 |
| e) | Lot 892, Jellystone Campground | $10,000.00 |
| f) | Husband's portion of the household goods and furnishings | $20,000.00 |
| g) | Husband's firearms) ammunition and sporting equipment | $25,000.00 |
| h) | Husband's gun safe | $3,000.00 |
| i) | Parties' 2008 Amended Federal Tax Refund | $3,600.00 |
| j) | Husband's 2004 Ford F350 Pickup Truck | $7,143.00 |
| k) | Two (2) Yamaha Grizzley 4-wheelers | $6,616.00 |
| l) | John Deere garden tractor | $4,100.00 |
| m) | 1999 Nevvmar American Star Four Camper 5th Wheel (net) | $7,743.00 |
| n) | 2004 Harley Davidson Screaming Eagle Motorcyle (net) | $7,518.00 |
| o) | 2007 camper | $25,000.00 |
| p) | Husband's Crossroads Bank Checking Account #9192 | $219.00 |
| q) | Husband's interests in Simmons Company, NEICCS, B&D Family Investments and B&D Family Limited Partnership (net) | $500,000.00 |
| r) | Husband's Simmons Company 401(k) | $26,404.00 |
| s) | Husband's E* Trade Financial stock account | $829.00 |
| t) | Husband's Hartford Union Security Ins. Co. policy cash surrender value | $1,250.00 |
| | Husband's Total Assets: | $736,052.00 |

B.     Husband shall be ordered to timely and completely pay and hold Wife harmless in all respects, including attorney fees, the following debts

| | | |
|---|---|---|
| a) | Husband's Sears Charge Card Account #l600 | $320.00 |

|   |   |
|---|---|
| b) Star Financial Bank Account #2588 unsecured Line of Credit | $2,915.00 |
| c) Lowes Account #673 | $3,231.00 |
| d) Sam's club Account #5590 | $1,189.00 |
| e) United ADJ #8109 | $438.00 |
| f) Citi Bank Account #8820 (perhaps the same as Citi Platinum Account #6650) | $6,000.00 |
| Husband's Total Debts: | $14,093.00 |
| C. NET: | $721,959.00 |

35.     In order for Wife to receive 50% of the marital estate, she should receive $364,674.00.  Given that she has only received $7,389.00 of the net marital estate of $729,959.00, she needs to receive from Husband $357,285.00.

\*     \*     \*     \*

41.     Husband is further ordered to hold Wife harmless and indemnify her and [her mother] in all respects, including attorney fees, regarding the present lawsuit brought by the Simmons Company and [Sarah] against Wife and her mother[.] Given Husband's role in the financial affairs of the various businesses he and his brother own and operate, this Court does not believe that this lawsuit could have been brought against Wife and her mother … without Husband's authorization and/or consent.  Wife is ordered to quitclaim any interest she has in the underlying real estate involved in that present lawsuit to Husband and/or to the Simmons Company, as directed by the attorney for the Simmons Company in that lawsuit.  Husband is ordered to cause that lawsuit to be dismissed forthwith against both Wife and her mother … with prejudice.  Failing that dismissal within thirty (30) days of the issuance of this Decree, Wife may petition this Court to review Husband's failure in the aforesaid regard by way of a Contempt Citation, in which she may ask for more appropriate and/or specific relief at that time.

Appellant's App. pp. 14, 15-16, 20, 23, 25, 26-28, 30-31.

On June 22, 2011, Husband filed a notice of appeal. On February 3, 2012, this court suspended briefing at Wife's request, which was prompted by Husband's bankruptcy filing. In 2015, briefing resumed, presumably because Husband's bankruptcy proceeding had concluded.

# Discussion and Decision

## I. Whether the Trial Court Abused its Discretion in Assigning Value to Certain Marital Assets

Husband contends that the trial court abused its discretion in valuing the Franchise and the Marital Residence. "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id*. (citations, quotation marks, and brackets omitted).

As for the assignment of values to particular assets in the marital estate,

> A trial court has broad discretion in valuing marital assets, and its valuation will only be disturbed for an abuse of that discretion. *Leonard v. Leonard*, 877 N.E.2d 896, 900 (Ind. Ct. App. 2007). A trial court does not abuse its discretion as long as sufficient evidence and reasonable inferences exist to support the valuation. *Id.* If the trial court's valuation is within the scope of the evidence, the result is not clearly against the logic and effect of the facts and reasonable inferences before the court. *See Skinner v. Skinner*, 644 N.E.2d 141, 144 (Ind. Ct. App. 1994). When determining the date upon which to value the marital assets, the trial court may select any date between the date of filing the dissolution petition and the date of the final hearing. *Deckard v. Deckard*, 841 N.E.2d 194, 200 (Ind. Ct. App. 2006) (citing *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996)).

*Webb v. Schleutker*, 891 N.E.2d 1144, 1151 (Ind. Ct. App. 2008).

## A. The Franchise

[13]     Husband contends that the trial court abused its discretion in valuing the Franchise because the assigned value fails to capture the Franchise's value as an ongoing business enterprise. Husband points to the Franchise's ability to (1) pay Wife a steady salary of $30,000.00 per year, (2) service the Franchise's debt, and (3) provide funds for the construction of the Marital Residence. First, Wife testified at the final hearing that she had never drawn a steady income from the Franchise, hoping (provided refinancing was secured) to draw $30,000.00 from the Franchise in the future. Second, despite Wife's testimony that the Franchise was providing significant debt service, the Franchise's debt stood at $483,598.00, over $30,000.00 more than the purchase price approximately three years previously. Finally, while the trial court did find that some withdrawals

were made which were applied to the cost of the Marital Residence, there is no finding relating to how much those withdrawals might have been.

The trial court split the difference, more or less, between Husband's $100,000.00 valuation and Wife's -$77,000.00. Put another way, the trial court's valuation falls within the scope of the evidence. Given ample evidence that the Franchise is not yet profitable but that it might someday be, we cannot say that the trial court's valuation of $0.00 constitutes an abuse of discretion. Husband's argument is an invitation to reweigh the evidence, which we will not do. *See DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), *trans. denied*.

## B. The Marital Residence

Husband contends that the trial court overestimated the value of the Marital Residence when it assigned it a value equal to the current mortgage loan balance, which was $407,000.00 as of the final hearing. Husband argues that the sales agreement for $360,000.00 entered into in December of 2010, and another offer to purchase at around the same time for $347,000.00 more accurately reflect the Marital Residence's true value. The sale for $360,000.00 did not occur because Husband elected to regain possession of the Marital Residence. First, Wife submitted evidence that the fair market value of the Marital Residence in April of 2009 was $450,000.00. Although Husband argues that "[i]t is no secret at the time of the decree the real estate values in Indiana have plummeted," Appellant's Amended Br. p. 12, he points to no evidence touching on this plummet, much less any evidence to establish the

approximately 20% drop in value he claims occurred. Moreover, Husband presents no evidence that the offers for $360,000.00 and $347,000.00 were reasonable. Indeed, one possible inference to be drawn from Husband's decision not to sell the Marital Residence at $360,000.00 is that he considered it a below-value offer. As with the previous issue, the trial court's valuation is within the scope of the evidence. Husband's argument, as was his previous argument, is nothing more than an invitation to reweigh the evidence, which we will not do. *See id*. Husband has failed to establish that the trial court abused its discretion in valuing the Franchise and Marital Residence.

## II. Whether the Trial Court Abused its Discretion in Ordering Husband to Cause The Company to Dismiss its Lawsuit Against Wife and Wife's Mother

[16] Finally, Husband contends that the trial court erred in ordering him to cause the Company to dismiss its lawsuit against Wife and her mother concerning title to the Property. Husband testified at the final hearing, and the trial court found, that he had a 44% interest in the Company. Without more, such as evidence that Husband was appointed a proxy by another owner, a 44% interest simply does not give Husband control over the Company's affairs. "The law recognizes that the majority shareholders normally have a right to manage, operate and control the corporation." *Lafayette Realty Corp. v. Moller*, 215 N.E.2d 859, 861 (Ind. 1966). Whoever the majority owner or owners of the Company are, they are not party to this lawsuit, and therefore cannot be ordered to dismiss the lawsuit. "It is axiomatic that a divorce decree does not affect the rights of nonparties." *Sovern v. Sovern*, 535 N.E.2d 563, 566 (Ind. Ct.

App. 1989). We conclude that the trial court erred in ordering Husband to cause the Company to dismiss its lawsuit against Wife and Wife's mother, because Husband does not have the legal authority to do so.[2]

# Conclusion

[17] We conclude that the trial court did not abuse its discretion in assigning values to the Franchise and the Marital Residence. However, we conclude that the trial court erred in ordering Husband to cause the Company to dismiss its lawsuit against Wife and Wife's mother, as Husband does not have a controlling interest in the Company. We remand with instructions for the trial court to vacate the portion of its dissolution decree ordering Husband to cause the Company to dismiss the lawsuit.

[18] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and Riley, J., concur.

---

[2] Wife argues that Husband's claim of not having a controlling interest in the Company is a "ruse[,]" Appellee's Br. p. 22, and that he has *de facto* control. Even assuming, *arguendo*, that this is true, this does not change the fact that he does not have *de jure* control, which is as far as our inquiry may go. Although we have concluded that the trial court did not have the authority to order Husband to cause the Company to dismiss the lawsuit, we remind the parties that we have affirmed the portion of the dissolution order providing that "Husband is further ordered to hold Wife harmless and indemnify her and [her mother] in all respects, including attorney fees, regarding the present lawsuit brought by the Simmons Company and [Sarah] against Wife and her mother[.]" Appellant's App. p. 30.