## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2020, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert C. Becker
Laurie D. Johnson
Boje, Benner, Becker, Markovich
& Hixson, LLP
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ryan Haskin,<br>*Appellant-Defendant,*<br><br>v.<br><br>Tammy Haskin,<br>*Appellee-Plaintiff* | March 23, 2020<br><br>Court of Appeals Case No.<br>19A-DC-1847<br><br>Appeal from the<br>Hamilton Circuit Court<br><br>The Honorable<br>Paul A. Felix, Judge<br><br>Trial Court Cause No.<br>29C01-1710-DC-9768 |

**Vaidik, Judge.**

# Case Summary

[1] Ryan Haskin ("Husband") appeals the trial court's division of property and award of attorney's fees in his divorce from Tammy Haskin ("Wife"). We affirm.

# Facts and Procedural History

[2] Husband and Wife married in June 2009. They have two children together, born in 2014 and 2016. The family lived together in Texas until April 2017, at which point Wife and the children came to Indiana to live with Wife's parents. Wife filed for divorce on October 23, 2017, which the trial court set as the final-separation date. The facts most relevant to the issues on appeal involve three categories of misconduct by Husband: dissipation of assets, noncompliance with the trial court's provisional order, and discovery violations.

[3] **Dissipation of assets.** There is extensive evidence of both pre- and post-filing dissipation of assets by Husband. In March 2017, he transferred $25,000 from the parties' joint Chase checking account to an account Wife had no knowledge of. In September and December of 2017, Husband made withdrawals of $6,600 and $3,900 from the same Chase account without telling Wife the purpose of the withdrawals. In early 2018 he gave a 2008 Lexus valued at $4,654 to charity. He totaled a 2009 Lexus that was titled in Wife's name and forged Wife's signature on the resulting insurance check in the amount of $8,698.19,

without Wife's knowledge. He also forged Wife's signature on four tax-refund checks totaling $12,977.73 and kept the proceeds for himself.

[4] **Noncompliance with provisional order.** In its provisional order, entered on December 5, 2017, the trial court ordered Husband to, among other things: (1) pay Wife $500/month for living expenses; (2) pay $233/week in child support; (3) do all things necessary to permit Wife to register the parties' Jeep Cherokee in Indiana; (4) pay all costs associated with the Cherokee (debt, insurance, taxes, registration, gasoline, routine maintenance, and repairs); (5) pay Wife $3,000 on or before December 15, 2017, for attorney's fees and litigation expenses; and (6) refrain from "transferring, encumbering, concealing, selling, or otherwise disposing of any joint property of the parties or asset of the marriage, except in the usual course of business or for the necessities of life, without the written consent of the parties or the permission of the Court." Appellant's App. Vol. II pp. 51-54. A month later, the parties agreed to modify the provisional order to require Husband to "obtain a policy of life insurance in an amount of $500,000.00 death benefits naming [Wife] as the beneficiary of the policy." *Id.* at 55.

[5] In July 2018, Wife filed a motion for rule to show cause and contempt citation, claiming that Husband had violated the provisional order by failing to pay all required child support and monthly expenses, refusing to sign an Odometer Disclosure Statement so that Wife could register the Cherokee, failing to pay Wife any of the $3,000 for attorney's fees and litigation expenses, and failing to purchase the life insurance. The trial court set the matter for a hearing on

August 22. Two days before the hearing, Husband paid his monthly-expense arrearage, his child-support arrearage, and the $3,000 for attorney's fees and litigation expenses and provided an executed Odometer Disclosure Statement for the Cherokee. Though Husband still had not purchased the life insurance, Wife agreed to hold the show-cause hearing at a later date.

[6] Six months later, in February 2019, Wife filed a second motion for rule to show cause and contempt citation. She alleged that Husband had not made any $500 monthly expense payments since September 2018; refused to pay for repairs and registration for the Cherokee, rendering it undrivable; disposed of the two Lexus automobiles without Wife's consent or court permission; forged Wife's signature on tax-refund checks and the insurance check for the 2009 Lexus and disposed of the money; refused to give Wife password access to family pictures stored on Dropbox; and still had not purchased the required life insurance.

[7] **Discovery violations.** In March 2018, Wife served Husband with interrogatories and a request for production of documents. Husband was required to respond within thirty days. Seven months later, on October 11, 2018, Wife filed a motion to compel, claiming that Husband had failed to provide complete responses despite multiple reminder emails from Wife and an order from the court requiring that all paper discovery be exchanged before a pretrial conference on October 12. On February 8, 2019, Wife renewed her motion to compel, claiming that Husband had yet to fully respond to her discovery requests. In particular, Wife alleged that Husband had not provided all requested information about two businesses in which Husband owned

interests (Smash My Trash and Your Container Solutions) and that she had to resort to non-party discovery. In March 2019, the trial court granted Wife's motion to compel and ordered Husband to pay "the reasonable attorney fees and costs by [Wife] in pursuit of discovery documents and information requested," which amounted to $13,844.75, as well as "the fees and costs incurred by [Wife] for a calculation of Smash My Trash, LLC," which amounted to $1,785. *Id.* at 42, 127. On appeal, Husband does not deny that he failed to comply with discovery. To the contrary, he acknowledges his "failure to completely or timely respond to Wife's discovery requests." Appellant's Br. p. 8.

[8] The trial court held the final hearing in June 2019. At the time, Husband was earning $2,307 per week (approximately $120,000/year) working for General Dynamics. Wife was earning $271 per week working for Noblesville Schools and YMCA, but the court imputed income of $390 per week ($20,280/year). In its final decree, the trial court awarded 56% of the marital estate to Wife and 44% to Husband, citing "Husband's significantly higher employment income, Husband's significantly higher earning capacity, and Husband's significant dissipation of liquid assets just prior to the Petition Date and throughout the pendency of the dissolution." Appellant's App. Vol. II p. 24. Based on the parties' financial circumstances and "Husband's consistent non-compliance with routine discovery requests and contemptuous disregard for Court Orders," the court also ordered Husband to pay an additional $30,000 of Wife's attorney's fees. *Id.* at 44. Finally, the court found Husband in contempt for the

reasons cited in Wife's second motion for rule to show cause and for failing to pay the discovery-related fees and costs he was ordered to pay in March 2019 ($13,844.75 and $1,785).

Husband now appeals.

# Discussion and Decision

# I. Valuation of Chase account

Husband first argues that the trial court erred in its valuation of the parties' joint Chase checking account. A trial court enjoys broad discretion in assigning values to assets in divorce cases, and we will not disturb the trial court's valuation absent an abuse of that discretion. *Leonard v. Leonard*, 877 N.E.2d 896, 900 (Ind. Ct. App. 2007). We will not find an abuse of discretion if there is sufficient evidence, and reasonable inferences therefrom, to support the valuation. *Id.*

The trial court valued the Chase account at $26,194.56—the balance as of July 31, 2018. Husband contends that the court should have valued the account at $1,022.45 (the balance on October 23, 2017, when Wife filed for divorce) or $3,598.65 (the balance on December 5, 2017, the date of the provisional order). He does not dispute that trial courts generally have discretion to select any date between the date of filing and the date of the final hearing when valuing marital assets. *McGrath v. McGrath*, 948 N.E.2d 1185, 1187 (Ind. Ct. App. 2011). Instead, citing the principle that property acquired after the final separation of

the parties is not part of the marital estate, *see* Ind. Code § 31-15-7-4, Husband argues that "the increase in the value of the Chase Account was solely due to Husband's post-filing earnings."  Appellant's Br. p. 16.

[12]  Husband does not cite any evidence that supports his claim, and we cannot find any in the record.  There is an account statement showing two payroll deposits on November 22 and December 6, 2017, each for $1,065.58, but the balance as of December 19 was $1,023.60, and the record is silent as to how the balance grew to over $26,000 in July 2018.  Furthermore, Husband made two large withdrawals from the Chase account ($25,000 and $6,600) in the months leading up to the divorce filing and another large withdrawal ($3,900) shortly after the filing.  He did not tell Wife the purpose of any of the withdrawals.  We agree with Wife that this evidence "supports the trial court's decision to use a valuation date for the account on a date after the date of filing, but before the final hearing, when the account had a higher value."  Appellee's Br. p. 19.  We see no abuse of discretion in the trial court's valuation of the Chase account.

## II. 529 accounts

[13]  Husband next contends that the trial court erred by including two 529 education accounts established for the two children—with balances totaling $7,057.54—in the marital estate.  Determining whether an asset is a marital asset is a matter within the discretion of the trial court, and we will reverse such a determination only for an abuse of that discretion.  *Harrison v. Harrison*, 88 N.E.3d 232, 234 (Ind. Ct. App. 2017), *trans. denied*.

[14] Husband argues that the 529 accounts are not marital assets because he created them in 2018 (after the date of final separation), they "are solely in Husband's name," and "the only funds in these accounts result from $8,000 in additions that Husband made post-filing at some point in calendar year 2018." Appellant's Br. p. 17. He asserts that the accounts are therefore his "after-acquired property[.]" *Id.* Again, property acquired after the final separation of the parties is not part of the marital estate. I.C. § 31-15-7-4. As with the Chase account, however, Husband fails to cite any evidence of the source of the funds in the 529 accounts. Even during his own testimony, he did not say that he funded the accounts with post-filing earnings. We agree with Wife that "[a] reasonable inference could be drawn from the facts and evidence presented to the trial court that the 529 accounts were funded by the joint marital assets taken by Husband from the Chase joint checking account and/or the joint marital assets dissipated by Husband." Appellee's Br. p. 22. Because Husband has not established that the money in the 529 accounts is from his own post-filing funds, we cannot say that the trial court abused its discretion by including the accounts in the marital estate.

# III. Attorney's fees

[15] Husband's last argument is that the trial court erred by ordering him to pay $30,000 of Wife's attorney's fees. Indiana Code section 31-15-10-1 gives trial courts discretion to order the payment of attorney's fees in divorce cases. We

will reverse such an order only for an abuse of that discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007).

[16] Husband challenges the fee award on three grounds. First, citing the rule that a court considering an award of attorney's fees in a divorce case "must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income and other factors that bear on the reasonableness of the award," *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1028 (Ind. Ct. App. 2003), Husband contends that the trial court's consideration of the parties' relative economic circumstances focused "solely" on the disparity in income (Husband's $120,000 vs. Mother's $20,000), Appellant's Br. p. 20. He argues that the court did not consider his other financial obligations—more than $500/week in child support, the expense of traveling to Indiana to exercise parenting time, monthly equalization payments to Wife in the amount of $3,135 (based on the division of Husband's $627,000 interest in Smash My Trash, LLC), and the other fees, costs, and expenses he was ordered to pay in this case. Husband cites no evidence to support his claim that the trial court failed to consider those obligations and relied "solely" on the income disparity. To the contrary, the court specifically said that it was "taking into consideration the relative earnings, earning ability, **economic circumstances, and the available resources of both parties**[.]" Appellant's App. Vol. II p. 44 (emphasis added). Husband has not established an abuse of discretion on this issue.

[17] Second, Husband asserts that the trial court based the $30,000 fee award on the same misconduct that was the basis for the $13,844.75 fee award in March 2019—his discovery violations. He says that he is "being punished twice for the same conduct." Appellant's Br. p. 21. It is true that the trial court mentioned Husband's discovery violations when making the $30,000 fee award. However, the court also emphasized Husband's superior economic position and his repeated failure to comply with court orders (which is separate from his failure to cooperate in discovery):

> The dissolution process was unnecessarily complicated, protracted, and frustrated as a result of Husband's consistent noncompliance with routine discovery requests and contemptuous disregard for Court Orders. Consequently, Wife has incurred significant attorney fees, that but for Husband's behavior, could have been avoided.

> Pursuant to I.C. §31-15-10-1, and taking into consideration the relative earnings, earning ability, economic circumstances, and the available resources of both parties, Husband shall contribute toward the attorney fees incurred by Wife in the amount of Thirty Thousand Dollars ($30,000.00)[.]

Appellant's App. Vol. II p. 44. We see no abuse of discretion in this respect.

[18] Third, Husband contends that the $30,000 fee award was more than Wife asked for. He directs us to the following testimony by Wife at the final hearing:

> I'm asking for Mr. Haskin to help with the attorney fees that I've incurred and helping with $30,000 towards them. Seeing that right now looking the fees that I've incurred are in excess of $58,000, and that's, I would say it's in an effort to obtain

knowledge about certain things I guess in our estate or part of our marital assets and debts.

Tr. Vol. II p. 58. According to Husband, this testimony should be read as a request for Husband to pay a **total** of $30,000 of Wife's attorney's fees—including the $16,844.75 he had already been ordered to pay in the provisional order ($3,000) and the March 2019 order compelling discovery ($13,844.75)—as opposed to an **additional** $30,000. But nowhere in that testimony did Mother clearly limit her request. As such, Husband has again failed to show an abuse of discretion.

Affirmed.

Najam, J., and Tavitas, J., concur.